**In re George HYDEN and Joyce Hyden, Debtors.**

**Bankruptcy No. 89–2876.**

United States Bankruptcy Court, W.D. Oklahoma.

April 5, 1990.

**432**

Melinda Monnet, Oklahoma City, Okl., for debtors.

Kirk Cejda, Oklahoma City, Okl., for Creditor.

Lyle R. Nelson, Oklahoma City, Okl., for Trustee.

ORDER ON DEBTORS' MOTION TO RE-CONSIDER AND CLARIFY ORDER ON OBJECTIONS TO CONFIRMA-TION OF AMENDED CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

### THE MOTION TO RECONSIDER

Debtors request reconsideration of this court's order of January 22, 1990, wherein this court found that "[e]ven when the claim is bifurcated under § 506(a) ... the provisions of [11 U.S.C.] § 1322(b)(5) pro-tect the creditor at least to the extent that they require that the default, i.e., the ar-rearages, be cured in a reasonable time and that regular payments be maintained, al-beit for a shorter period of time." *In re Hyden,* 110 B.R. 46, 50 (Bankr.W.D.Okla. 1990).

Debtors contend, as they have through-out these proceedings, that the arrearages on their mortgage debt were discharged in their earlier Chapter 7 bankruptcy case, and that such arrearages are not required to be "cured" in order to treat the mort-gage lien in this Chapter 13 case. They further contend that the value of the prop-erty, and therefore the amount of the claim secured by the mortgage, is $65,000, and that they need only provide for the amorti-zation of that amount in order to present a confirmable Chapter 13 plan. As has been true throughout this proceeding, and in previous cases as well, debtors' counsel is simply unwilling or unable to understand the court's rulings, or the rationale which supports them.

■ In the earlier Chapter 7 case, debtors' personal liability for *the entire debt* was discharged. The discharge was not limited to the $20,000 in arrearages which then existed. The lien securing the debt, however, was not avoided, and passed through the Chapter 7 proceeding unaffect-ed. 11 U.S.C. § 506(d). The practice of permitting debtors to schedule and treat a mortgage lien in a Chapter 13 case as though it was a debt upon which they had personal liability, when the underlying debt had been discharged in an earlier Chapter 7 case, is obviously the application of a legal fiction. It is however, a fiction through which debtors are permitted in many in-stances to save their home from fore-closure, when that result would not have been available to them in a Chapter 7 case. It is, if you will, an exercise of the inherent equitable powers possessed by all bank-ruptcy courts.

These debtors, however, have lived in the house for more than four years without making a single payment to the creditor. The amount of the payments not made by them aggregates approximately half of the alleged current value of the property. To schedule the mortgage lien as though it was a debt, at the alleged present value of the property, ignoring the substantial ar-rearages and all that has gone before, would be grossly inequitable, and would result in an unconscionable windfall to debtors, who have done nothing whatever to warrant the exercise of the court's eq-uitable powers for their benefit.

In this court's view, counsel for debtors is merely reasserting contentions dealt with by this court in its original order, or raising wholly unsupported and unsupport-able constitutional issues as a "smoke screen" to mask the frequently unintelligi-ble and in any event untenable legal posi-tions espoused on behalf of debtors. The motion to reconsider will therefore be de-nied.

### THE REQUEST FOR CLARIFICATION

■ In response to debtors' request for clarification of its earlier order, the court will expand upon the earlier order, with particular reference to the manner in which payments attributable to the arrearages should be credited. It should be noted that this subject does not arise unless debtors

can propose a plan under which the "default," the arrearages, will be cured in a reasonable time while the debtors are maintaining regular payments on the original debt. 11 U.S.C. § 1322(b)(5). Since the arrearages are alleged to aggregate approximately $32,000, and since the regular monthly payment is slightly in excess of $900, including approximately $770 applicable to principal and interest, the court is less than confident that debtors will be able to propose a plan which will be feasible and otherwise confirmable.[1]

If debtors can propose a confirmable plan under which the arrearages are paid within a reasonable time, while maintaining regular payments, payments attributable to the arrearages would be credited as they would have been credited had they been timely made. In other words, such payments would be credited first to accrued interest, at the contract rate, with the balance credited against the principal balance. The principal balance would be the amount of the allowed secured claim of the mortgage holder, and would be determined pursuant to § 506(a), either by agreement between debtors and the creditor or by order of the court after a valuation hearing convened for that purpose. The regular monthly payments would also be credited first to interest and then to principal, as required by the underlying documents. The lien would be extinguished when the amounts credited to principal aggregate the amount of the allowed secured claim, whether or not the arrearages have been "cured" in their entirety at that time.

■ It is this court's view that the Congress, in permitting "deacceleration" and "cure" of defaults under § 1322(b)(5), intended to provide to creditors at least some assurance that they would be in no worse a position than would a creditor whose debtor had made all payments on his or her obligation.

Similarly, the requirement that the default be cured in a reasonable time would have the effect of placing the defaulting debtor in relatively the same position as that of a non-defaulting debtor. By "making up" the arrearages, while maintaining the regular payments, the principal balance would be reduced to an amount approximating that which would have existed had the payments been made when due.[2]

It is the application of § 506(a) which appears to create a discrepancy and to result in the creditor being placed in a somewhat less advantageous position with respect to a debtor who has been permitted to accumulate significant arrearages. As an example, assume that: (i) two debtors each borrow $100,000 on the same terms from the same creditor on the same day, giving a mortgage on identical homes, each valued at $125,000; (ii) one debtor timely makes all payments for a period of five years; (iii) the other debtor timely makes all payments for a period of four years, but fails to make any payments during the fifth year; (iv) both debtors file Chapter 13 petitions on the fifth anniversary of the notes and mortgages; (v) both invoke the provisions of § 506(a) and the court in both cases determines that the homes have a then present worth of $65,000.

The debtor who made all his payments would have reduced the principal amount of his debt to some $85,000, while the debtor who stopped making payments a year earlier, would still owe some $90,000. The allowed secured claim of the creditor in both cases would be $65,000. In order to propose a confirmable Chapter 13 plan, the defaulting debtor would be required either to pay the entire allowed secured claim during the term of the plan or to make up the 12 defaulted payments in a reasonable time, while resuming regular monthly payments. The debtor current in his payments would merely have to continue making the regular payments. Both debtors would re-

1. The court has not been asked to determine whether debtors should be required to reimburse creditor for the costs incurred by it in connection with the foreclosure and sale. That issue, therefore, will not be addressed in this order.

2. In this scenario, it is assumed that the increased interest accrual and the decreased principal reduction resulting from the payments not having been timely made would not be material in most instances.

**434**

tire the amount of the allowed secured claim at approximately the same time and would have paid approximately the same amount in the aggregate to do so.[3]

The creditor, however, would not recoup the differential which existed between the two balances as of the Chapter 13 petition dates, in the example given, $5,000. While this is unfortunate, it is noted that in most situations the creditor must accept some responsibility for permitting arrearages to accumulate to the extent that would give rise to a significant differential.

### CONCLUSION

This court is of the view that debtors' motion for reconsideration should be denied as being wholly without merit, and that the foregoing constitutes a complete response to the request for clarification.

IT IS SO ORDERED.

---

**3.** See footnote 2, above, for the assumption    upon which this conclusion is based.