In re Gary A. LOADER and Nancy M. Loader, Debtors.

Gary A. LOADER and Nancy M. Loader, Plaintiffs,

v.

CHARLTON CREDIT UNION, First National Bank of Boston, Marion Ellstrom and Country Bank for Savings, Defendants.

Bankruptcy No. 90–41462.
Adv. No. 90–4292.

United States Bankruptcy Court,
D. Massachusetts.

Decided June 10, 1991.

Francis B. Fennessey, Charlton, Mass., for debtor/plaintiffs.

Mark Darling, Charlton, Mass., for Charlton Credit Union/defendant.

John Burdick, Worcester, Mass., for First Nat. Bank of Boston/defendant.

Craig T. Ornell, Worcester, Mass., for Marion Ellstrom/defendant.

Wayne LeBlanc, Worcester, Mass., for Country Bank for Sav./defendant.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Gary A. Loader and Nancy .M. Loader (the "Debtors") own their residence subject to a mortgage held by Charlton Credit Un-

**14**

ion ("CCU"). Pursuant to 11 U.S.C. § 506(a) (1982), they seek by this complaint to bifurcate the CCU mortgage debt into a secured claim and an unsecured claim based upon the value of the mortgage interest. They also request, pursuant to § 506(d), that the court declare the mortgage void to the extent that it secures an indebtedness in excess of CCU's allowed secured claim, and that the court declare entirely void the junior attachment liens of the defendants Marion Ellstrom, First National Bank of Boston, and Country Bank for Savings. The Debtors have proposed a plan under Chapter 13 which treats CCU's mortgage as a secured claim only to the extent of its value. In its answer to the complaint and in its objection to the plan CCU contests the valuation asserted by the Debtors and contends that the Debtors are prohibited under 11 U.S.C. § 1322(b)(1) (1982) from modifying CCU's mortgage rights. At the conclusion of the trial, the court found the value of CCU's mortgage. Thereafter, the court issued brief conclusions of law and a judgment bifurcating CCU's claim, partially voiding its mortgage, and completely voiding the attachment liens of the other defendants. The present opinion contains more detailed conclusions of law concerning the Debtors' ability to bifurcate CCU's claim notwithstanding § 1322(b)(2).

The CCU mortgage is a first mortgage on the Debtors' residence at 120 Ramshorn Road, Charlton, Massachusetts. The mortgage secures two notes, one in the principal sum of $156,000 payable over thirty years at a variable interest rate, and the other in the principal sum of $15,000 payable over fifteen years at fourteen percent per annum. I have valued CCU's "interest in the estate's interest in such property" (§ 506(a)) at $160,000. Because CCU's total debt at the time of the hearing was $168,698.26, bifurcation of the claim on this valuation means that CCU holds a secured claim of $160,000 and an unsecured claim of $8,698.26.

Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim ...

Under § 506(d), with exceptions not material here, a lien is void "[t]o the extent that [it] secures a claim against the debtor that is not an allowed secured claim."

Section 1322(b)(2), on the other hand, provides as follows:

[T]he plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...

CCU contends that because § 1322(b)(2) expressly applies to a mortgage upon a debtor's principal residence, this more specific provision should prevail over § 506 which deals with all secured claims.

The First Circuit has not addressed this alleged conflict between the two sections. Courts elsewhere are divided on whether § 1322(b)(2) prohibits "lien stripping" of a mortgage debt encumbering the principal residence of a chapter 13 debtor. One line of cases holds that the bifurcation principle under § 506 controls because § 1322(b)(2) only prohibits modification of the allowed secured portion of the creditor's claim as established under § 506(a). *E.g., Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410, 1415 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 126–28 (3d Cir.1990); *Houghland v. Lomas & Nettleton Co. (In re Houghland)*, 886 F.2d 1182, 1183–85 (9th Cir.1989); *Bellamy v. Federal Home Loan Mortgage Corp. (In re Bellamy)*, 122 B.R. 856 (Bankr.D.Conn.1991); *Goins v. Diamond Mortgage Corp.*, 119 B.R. 156, 158–62 (Bankr.N.D.Ill.1990); *McNair v. Chrysler First Financial Serv. Corp. of Va. (In re McNair)*, 115 B.R. 520, 522–23 (Bankr.E.D.Va.1990).

The other line of cases holds that bifurcation of the claim is prohibited by § 1322(b)(2). *E.g., In re Mitchell*, 125 B.R.

5 (Bankr.D.N.H.1991); *In re Chavez,* 117 B.R. 733, 736–37 (Bankr.S.D.Fla.1990); *In re Sauber,* 115 B.R. 197, 199 (Bankr.D. Minn.1990); *In re Hynson,* 66 B.R. 246, 252 (Bankr.D.N.J.1986); *In re Smith,* 63 B.R. 15, 17–18 (Bankr.D.N.J.1986).

■ Section 506 establishes the principle that the holder of a security interest worth less than the debt is actually the holder of two claims, one secured and the other unsecured. Nothing in either § 506 or § 1322(b)(2) suggests that the term "secured claims" appearing in the latter section is to be given any different meaning in § 1322(b)(2) than in other provisions of the Bankruptcy Code. If Congress wanted to make an exception to the bifurcation principle of § 506, it would have expressly done so, as it did in § 1111(b)(2) which provides that "notwithstanding § 506(a) of this title" an undersecured creditor may elect to have an allowed claim treated as a secured claim in the full amount of the claim. Where a statute provides an explicit exception to a rule of general application like § 506, other exceptions should not be implied. *E.g., United States v. Goldbaum,* 879 F.2d 811, 813 (10th Cir.1989); *Bellamy,* 122 B.R. at 862. I therefore agree with the view of the several courts of appeal that a chapter 13 plan may bifurcate a mortgage on the debtor's principal residence.

The legislative history, although somewhat inconclusive, is consistent with this interpretation. The Commission's Report included proposals for reform of consumer bankruptcies. Section 6–201 of its bill, the genesis of § 1322(b)(2), dealt only with claims secured by personal property. It stated that:

[A chapter 13 plan] ... may include provisions dealing with claims secured by personal property severally, on any terms, and may provide for the curing of defaults within a reasonable time and otherwise alter or modify the rights of holders of such claims.

Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93 Cong., 1st Sess. Part II, 204 (1973), *reprinted in Collier* App. 2 at I, 284.

Neither of the later bills filed in the House and Senate focused on the treatment in chapter 13 of undersecured mortgages covering a debtor's principal residence. The House bill expanded on the Commission's recommendation by providing that "[a chapter 13] plan may ... modify the rights of holders of secured claims or holders of unsecured claims...." H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977), *reprinted in Collier* App. 3 at III, 537. This bill contained no exception for a claim secured by a security interest on the debtor's principal residence.

The Senate version was more protective of real estate mortgages. It contained an exception stating that the plan may "modify the rights of holders of secured claims (other than claims wholly secured by mortgages on real property) or holders of unsecured claims." S. 2266, 95th Cong., 2d Sess. § 1322(b)(2) (1978), *reprinted in Collier* App. 3 at VII, 572–73.

The two branches thereafter agreed upon a compromise bill pursuant to an informal conference. *See,* Klee, *Legislative History of the New Bankruptcy Code,* 54 Amer.Bank.L.J. 275, 290 (Summer, 1980). Representative Edwards and Senator DeConcini characterized the final version as a "compromise agreement." 1978 U.S.Code Cong. & Admin.News 5787, at 6481, 6550. The final version of § 1322(b)(2) contains an exception applying only to mortgages upon a debtor's principal residence rather than to all real estate mortgages. There is no explanation for the difference between it and both bills. What is clear is that the final version was the result of a compromise which is intended to give the holder of a mortgage upon a principal residence protection greater than that contained in the House bill but less than that contained in the Senate bill. There is nothing to suggest that if any of the claim is secured the entire claim should be treated as secured.

CCU cites *In re Smith,* 63 B.R. 15 (Bankr.D.N.J.1986), for the proposition that allowing bifurcation of a claim secured only by debtor's primary residence would leave § 1322(b)(2) without any "raison d'etre." The secured portion of claim remains sub-

ject to the statute's special protection. It is only the unsecured portion of the claim that may be modified. If the claim is fully secured, § 1322(b)(2) prevents any modification of the claimant's rights.

Nor am I persuaded by the argument that § 1322(b)(2) should "prevail" as the more specific of two conflicting statutory provisions in that it deals only with the treatment of mortgages on principal residences in chapter 13 plans. I find no conflict in the two provisions. Section 506 is a provision of general application. It would be twisting the plain meaning of words to conclude that a "secured claim" under § 506(a) is not among the "secured claims" dealt with in § 1322(b)(2).

■ I reject Debtors' argument that the $15,000 mortgage note is entirely outside the limitation contained in § 1322(b)(2) because it is not secured "only" by the residence as the result of its provision granting CCU a security interest in the Debtors' deposits with CCU. A so-called "security interest" in deposits with a payee would seem merely a confirmation of the common law right of setoff.

## CONCLUSION

The Debtors may bifurcate the CCU mortgage beyond a valuation of $160,000 and entirely void the other defendants' liens. The Debtors have not sought to reduce their current payments of interest as the result of the bifurcation. The judgment previously issued therefore specified that they make monthly payments of principal and interest on the two notes in accordance with the terms of the notes until principal payments on both notes total $160,000.