**In re Jacqueline L. CARDINALE, Debtor.**

**Bankruptcy No. 92–10142.**

United States Bankruptcy Court, D. Rhode Island.

July 7, 1992.

Christopher M. Lefebvre, Pawtucket, R.I., for debtor.

Eric T. Grande, Pawtucket, R.I., for Aetna Finance Co. d/b/a ITT Financial Services.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for trustee.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on Aetna Finance Company's opposition to confirmation of the Debtor's Chapter 13 plan. The basis for Aetna's objection is that the plan proposes an impermissible modification of its rights as a secured creditor, in contravention of 11 U.S.C. § 1322(b)(2). After review of the briefs submitted and upon examination of the available case law, we re-affirm our earlier decision in *In re DiQuinzio*, 110 B.R. 628 (Bankr.D.R.I.1990) which held the bifurcation of mortgages on principal residences to be consistent with the provisions of § 1322(b)(2). Aetna's objection is therefore overruled, without prejudice.

## FACTS OF THE CASE

On January 21, 1992 the Debtor filed the instant Chapter 13 petition. She owns a two-family house which is encumbered by a first mortgage with an approximate balance of $66,000. Aetna holds a second mortgage on the property with an original balance of $15,623 and an accelerated pay off figure of $39,000. The Debtor, who places the value of the property at $65,000, filed a plan that contemplates curing arrearages on the first mortgage, and reaffirming that obligation. The plan treats Aetna's second mortgage as an unsecured claim, and does not provide for any payment to unsecured creditors. Not surprisingly, Aetna filed a timely objection to the proposed plan.

## DISCUSSION

Aetna's objection and supporting Memorandum of Law draw in large part from the Supreme Court's recent decision in *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup,* the Supreme Court held that § 506(d) of the Code could not be used to strip down mortgages in Chapter 7 cases. The rationale of the majority opinion was that an "allowed secured claim" is not a term of art as it is in § 506(a),[1] but "rather the words should be read term-by-term to refer to any claim that is first, allowed, and, second, secured." *Id.* 112 S.Ct. at 777.

---

1. Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use on a plan affecting such creditor's interest.

According to this rationale, § 506(d) protection is extended to claims that are: 1) allowed in accordance with § 502, and 2) secured "by a lien with recourse to the underlying collateral." *Id.* The Court looked to both the text of the statute and its legislative history, and concluded that a good deal of ambiguity existed. It went on to say that since Congress had not expressed an intent to authorize a departure from the prevailing practice, that the Court was therefore unable to do so. Accordingly, the Court held that "strip-downs" in Chapter 7 cases were inconsistent with the pre-Code law, and therefore not allowable.

By analogy, Aetna asks that we extend the Supreme Court's reasoning to Chapter 13 cases,[2] calling our attention to the decisions of other courts that have done so. *See, e.g., In re Strober,* 136 B.R. 614 (Bankr.E.D.N.Y.1992); *In re Ireland,* 137 B.R. 65 (Bankr.M.D.Fla.1992). In addition to the fact that these. cases reach a result with which we disagree, they appear to be the minority position. As there is no controlling First Circuit authority,[3] we prefer to follow the Second Circuit holding that Chapter 13 bifurcations are not inconsistent with *Dewsnup. Bellamy v. Fed. Home Loan Mortgage Corp.,* 962 F.2d 176 (2d Cir.1992).

In *Bellamy,* the Second Circuit joins the Third, Ninth, and Tenth Circuits in concluding that residential mortgages may be bifurcated in Chapter 13 cases. *See Eastland Mortgage Co. v. Hart,* 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir.1990); *Hougland v. Lomas & Nettleton Co.,* 886 F.2d 1182 (9th Cir.1989). In *Bellamy* the Court examined the legislative history and policy of Chapter 13 and came to the conclusion that the term "secured claim" in § 1322(b)(2) was defined by the language of § 506(a). The Court reasoned further that the "claim" in the language referring to the exception created for principal residences was also governed by § 506(a).

The *Bellamy* decision was issued post-*Dewsnup* and the Court explained its reason for distinguishing *Dewsnup.* It found that "strip-downs" in Chapter 13 cases *were* a marked departure from previous bankruptcy practice,[4] and that they were consistent with Congress' intent in the creation of the Chapter 13 provisions. The Second Circuit therefore concludes that the bifurcation and reinstatement of a mortgage secured by a debtor's principal residence was consistent with the language of § 1322(b)(2).

In urging this Court to apply *Dewsnup* in a Chapter 13 case, Aetna has asked us, in effect, to reverse our holding in *DiQuinzio.* Our decision paralleled the *Bellamy* holding that the legislative history and statutory construction of §§ 506(a) and 1322(b)(2) are not incompatible, and that the "claim" referred to in § 1322(b)(2) is defined by § 506(a). *Dewsnup,* we think, has created no inconsistency in that analysis.

Accordingly, we are satisfied that in Chapter 13 cases *DiQuinzio* is still the way to go, and that, in the absence of any controlling precedent to the contrary, we hold similarly here.

---

**2.** The Supreme Court explicitly recognized the narrowness of its holding in *Dewsnup. See Dewsnup,* 112 S.Ct. at 778, n. 3.

**3.** Presently, there is a split within the Circuit. *See, e.g., Matter of Torres Lopez,* 138 B.R. 348 (D.P.R.1992) (holding that § 1322(b)(2) exception is governed by the language in § 506(a)); *In re Loader,* 128 B.R. 13 (Bankr.D.Mass.1991); *In re DiQuinzio,* 110 B.R. 628 (Bankr.D.R.I. 1990); *contra, In re Mitchell,* 125 B.R. 5 (Bankr. D.N.H.1991).

**4.** [A] Chapter 13 debtor's plan of reorganization may today, *contrary to pre-Code practice,* deal with creditors whose claims are secured by real property.... As a result, applying § 1322(b)(2) in light of § 506(a) does not alter well-settled bankruptcy principles. To the contrary, it furthers Congress' scheme under Chapter 13 by allowing the adjustment of claims secured by real property.

This suggests that, as distinct from the more limited concerns implicated when lien avoidance is sought in Chapter 7, ... allowing Chapter 13 debtors to strip down an undersecured residential mortgagee's claim forwards the legislative purpose of the furthering reorganizations for individuals with regular income to enable them to retain their homes. *Bellamy,* 962 F.2d at 185 (emphasis added) (citations omitted).

**44**

Accordingly, Aetna's objection to confirmation of the Debtor's plan is OVERRULED. The Debtor's plan bifurcating Aetna's second mortgage position is confirmed, subject to remaining valuation and feasibility concerns.

Enter Judgment consistent with this opinion.