In re Mordred J. RICHARDS, Debtor.

Mordred J. RICHARDS, Plaintiff,

v.

CITICORP MORTGAGE,
INC., Defendant.

In re Renand DUROSIER and Adrienne
Durosier, Debtors

Renand DUROSIER and Adrienne
Durosier, Plaintiffs,

v.

FIRST NH MORTGAGE
CORP., Defendant.

In re Jean N. SYVERIN and Maude
J. Syverin, Debtors.

Jean N. SYVERIN and Maude
J. Syverin, Plaintiffs,

v.

FEDERAL HOME LOAN MORTGAGE
CORP., Defendant.

Bankruptcy Nos. 91–10849,
92–14857 and 92–14371.
Adv. Nos. 92–1184, 92–1392 and 92–1391.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 19, 1993.

Andrew C. Schultz, Boston, MA, for debtors, plaintiffs.

Richard C. Follender, Nashua, NH, for defendant First NH Mortg. Corp.

G. Matthew Kerns, Boston, MA, for defendant Federal Home Loan Mortg. Corp.

Donald H. Carvin, Braintree, MA, for defendant Citicorp Mortg., Inc.

## MEMORANDUM ON BIFURCATION OF CLAIMS SECURED BY DEBTORS' RESIDENTIAL REAL ESTATE

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

These adversary proceedings involve common issues of law. The plaintiffs, who are Chapter 13 debtors, seek to determine the amount of the defendants' claims secured by mortgages on their personal residences. The plaintiffs also seek to bifurcate the determined secured portion of the claims from the undersecured portion pursuant to 11 U.S.C. § 506(a)[1] and to satisfy the claims accordingly in their Chapter 13 plans. The defendants oppose bifurcation on the ground that section 1322(b)(2)[2] prohibits modification of a mortgage on real property that is a debtor's home.

---

1. Section 506(a) provides as follows:

   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
   11 U.S.C. § 506(a).

2. Section 1322(b)(2) provides as follows:

   (b) Subject to subsections (a) and (c) of this section, the plan may— ...
   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....
   11 U.S.C. § 1322(b)(2).

The complaints in these adversary proceedings were filed by Andrew C. Schultz, Esq., counsel to all the debtors in these cases. Each complaint is captioned "Complaint to Determine Secured Status." Through their nearly identical complaints, the debtors ask the Court only to establish "the appropriate bifurcation" of the mortgagees' claims "so that the same may be separated into secured and unsecured portions." The debtors do not expressly ask the Court to avoid the mortgagees' liens to the extent that the mortgagees' claims exceed the judicially determined value of their collateral. Additionally, the debtors through their Chapter 13 plans, which are similar in both format and inartful draftsmanship, do not refer to lien avoidance. However, the issue of lien avoidance is addressed by the parties in their memoranda and is related inextricably to bifurcation and cannot be ignored.

The parties have filed stipulations and memoranda in each adversary proceeding. They agree that the Court should determine the legal issues before hearing evidence as to facts, if any, that are in dispute. Accordingly, the Court shall treat the stipulations as plaintiffs' motions for partial summary judgment.

The issues articulated by the parties are ones of first impression in the eastern division of this district. Their resolution will have a significant impact on the administration of Chapter 13 cases, the confirmation of Chapter 13 plans and the outcome of numerous other pending adversary proceedings involving the identical issues.[3]

The primary issue before the Court is whether the use by Chapter 13 debtors of section 506(a) to bifurcate claims is an impermissible modification of the rights of mortgagees under section 1322(b)(2). Subsidiary issues arise with respect to the date for determining the value of the principal residence and the appropriate valuation standard. The subsidiary issues are not before the Court and are reserved for future determination. The treatment of prepetition arrearages, however, is a subject that the Court must of necessity address since, like lien avoidance, it is integral to the administration of Chapter 13 cases and confirmation of Chapter 13 plans. Notably, final determination of all issues before the Court must await a decision by the United States Supreme Court resolving the present split among the circuit courts as to bifurcation or Congressional action amending applicable provisions of the Bankruptcy Code.

## II. DEWSNUP V. TIMM

■ Complicating the issue is the recent and controversial United States Supreme Court decision in *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (hereinafter *"Dewsnup"*).[4] In *Dewsnup,* the Supreme Court ruled that a Chapter 7 debtor may not "strip down" a secured creditor's undersecured lien on real estate to the actual value of the collateral. In other words, the Supreme Court refused to allow a Chapter 7 debtor to reduce a mortgage on real property in which the estate had no interest to the judicially determined value of the collateral when that value was less than the amount of the claim secured by the lien. The Court held that section 506(d)[5] did not permit lien stripping of allowed claims to the extent

---

**3.** Although Fed.R.Bankr.P. 3012 permits the valuation of a claim secured by a lien on property in which the estate has an interest on motion, this Court requires the filing of an adversary proceeding to bring the issues of lien bifurcation and lien avoidance appropriately before the Court. *See* Fed.R.Bankr.P. 7001(2).

**4.** The *Dewsnup* opinion has been criticized as "the strangest case of statutory interpretation in recent years...." Mark E. MacDonald, "Confirmation by Cramdown through the New Value Exception in Single Asset Cases," 1 ABI L.J. 65, 75 (1993).

**5.** Section 506(d) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

they became unsecured for purposes of section 506(a). In short, the Court determined that the phrase "allowed secured claim" in section 506(d) was not an indivisible term of art defined with reference to section 506(a), only an allowed claim secured in the ordinary sense. Accordingly, Chapter 7 debtors can use section 506(d) only to avoid liens where the claim at issue is both disallowed and unsecured.

The Supreme Court emphasized the pre-Bankruptcy Code rule that real property liens pass through bankruptcy unaffected. It noted that the discharge of the undersecured portion of a claim only affects a debtor's personal liability. According to the Court, it does not affect the secured creditor's ability to proceed *in rem* against property for payment of its debt, thereby allowing appreciation in the value of property to benefit the creditor, not the debtor.

Despite the unequivocal holding with respect to Chapter 7 debtors, the Supreme Court stated:

Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Id.* — U.S. at ——, 112 S.Ct. at 778. The Court added in a footnote another qualification: "we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Id.*

The *Dewsnup* opinion has fueled the existing dispute among bankruptcy and appellate courts as to whether claims splitting under section 506(a) of the Bankruptcy Code constitutes an impermissible modification of the rights of home mortgage holders under section 1322(b)(2). Indeed, Justice Scalia, dissenting in *Dewsnup*, predicted the necessity of this Court's ruling today when he stated "unfortunate future litigants will have to pay the price for our expressed neutrality 'as to whether the words "allowed secured claim" have different meaning in other provisions of the

Bankruptcy Code.'" *Id.* at ——, 112 S.Ct. at 788.

In light of *Dewsnup*, many bankruptcy courts have wrestled with the interrelationship of sections 506(a) and 1322(b)(2) and are divided on the issue of whether a Chapter 13 debtor may bifurcate an undersecured claim into secured and unsecured portions. *Compare In re Govan*, 139 B.R. 1017 (Bankr.N.D.Ala.1992) (bifurcation permitted); *In re Sainz–Dean*, 139 B.R. 739 (Bankr.D.Colo.), *aff'd*, 143 B.R. 784 (D.Colo.1992) (same) *and Taras v. Commonwealth Mortg. Corp, (In re Taras)*, 136 B.R. 941 (Bankr.E.D.Pa.1992) (same) *with In re Doss*, 143 B.R. 952 (Bankr. E.D.Okla.1992) (bifurcation not permitted); *In re Ireland*, 137 B.R. 65 (Bankr.M.D.Fla. 1992) (same) *and In re Davidoff*, 136 B.R. 567 (Bankr.M.D.Fla.1992) (same). Moreover, some courts have attempted to reconcile *Dewsnup* with precedent allowing bifurcation in Chapter 13 proceedings. For example, in *In re Dyer*, 142 B.R. 364 (Bankr.D.Ariz.1992), the court stated the following:

In light of the *Dewsnup* decision, three approaches have perhaps developed concerning the creditor that only has a lien on the debtor's principal residence. One approach permits the bifurcation of the creditor's claim into a secured and unsecured claim, but prohibits the avoidance of the lien if the debtor does *not* propose to pay off the entire secured claim in the reorganization plan. *In re Zeigler*, 1992 WL 50006 (Bankr.E.D.Pa.1992); *In re Taras*, 136 B.R. 941 (Bankr.E.D.Pa.1992). Another approach is to follow strictly Section 1322(b)(2) (and utilize *Dewsnup* as further support therefor), prohibit bifurcation of the creditors' [sic] claim, and prohibit any avoidance of the creditor's lien. *In re Davidoff*, 136 B.R. 567 (Bankr.M.D.Fla.1992); *In re Ireland*, 137 B.R. 65 (Bankr.M.D.Fla.1992). Finally, a third approach is to permit bifurcation of the claim and avoidance of the lien as to the unsecured portion of the indebtedness. At least one Court may have so ruled in *dicta*. *In re Bellamy*, 22 BCD 1476, 962 F.2d 176 (2d Cir.1992).

*In re Dyer*, 142 B.R. at 369 (footnote omitted). In *Dyer*, the court concluded that the first approach was correct. It determined that the debtor's plan could not avoid the lien secured only by the debtor's principal residence. However, the court permitted the debtor to make payments on the secured portion of the claim and the unsecured portion of the claim during the Chapter 13 plan, although the lien would continue to encumber the residence to the extent of the secured and unsecured unpaid balance of the claims of the mortgagee as an *in rem* liability payable upon the sale of the debtor's residence. The effect of the court's ruling would preserve any appreciation in the value of the collateral for the benefit of the mortgagee. According to the Arizona court, the benefit to the debtor would be accelerated reduction of the principal balance and minimal repayment of the unsecured portion of the claim during the course of the Chapter 13 plan. In its words, "the Debtors pay less to the creditor over the term of the Chapter 13 plan than the Debtors would have paid if the creditor had a fully secured claim, with interest accruing on the full amount of the secured claim." *Id.* at 372.

■ This Court respectfully declines to follow *Dyer* and finds that bifurcation and avoidance of liens as to their unsecured portion following bifurcation is not precluded by *Dewsnup* in Chapter 13 cases involving mortgages secured only by a debtor's principal residence.

## III. CIRCUIT COURT OPINIONS

Five Circuit Courts of Appeal have addressed the issue posited above in six separate opinions. Three opinions antedate *Dewsnup, see Hougland v. Lomas & Nettleton Co. (In re Hougland)*, 886 F.2d 1182 (9th Cir.1989); *Wilson v. Commonwealth Mortg. Co. (In re Wilson)*, 895 F.2d 123 (3d Cir.1990); *Eastland Mortg. Co. v. Hart (In re Hart)*, 923 F.2d 1410 (10th Cir.1991), and three postdate it. *See Sapos v. Provident Inst. for Sav. in the Town of Boston (In re Sapos)*, 967 F.2d 918 (3d Cir.1992); *Bellamy v. Fed. Home Loan Mortg. Corp. (In re Bellamy)*, 962 F.2d 176 (2d Cir.1992). The United States Supreme Court has granted certiorari with respect to the most recent post-*Dewsnup* decision, *Nobleman v. Am. Sav. Bank (In re Nobleman)*, 968 F.2d 483 (5th Cir.), *cert. granted*, —— U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 580 (1992).

In *Nobleman*, the debtors proposed to cure the prepetition arrearages on their home mortgage and to direct payments to the mortgagee at the contract rate up to the scheduled value of the residence. The balance of the claim would be treated as a general unsecured claim. Like the holders of other unsecured claims, the mortgagee would receive nothing under the Noblemans' plan.

The mortgagee objected to confirmation of the Noblemans' Chapter 13 plan on the ground that the plan altered its rights in violation of section 1322(b)(2). The bankruptcy court denied confirmation, and the district court affirmed. The Court of Appeals for the Fifth Circuit began its discussion by summarizing the positions of the parties. Since these positions mirror those advanced in the cases now before this Court, a summary of them is warranted.

The Noblemans conceded that a debtor cannot modify the rights of the holder of a secured claim if the security is real property that is the debtor's principal residence. However, they asserted 1) that section 506(a) defines a secured claim as the value of the collateral, leaving the balance above the value as an unsecured claim; and 2) that under section 1322(b)(2) the only portion of the claim that cannot be modified is the part supported by the value of the collateral.

The mortgagee contended that the proposed bifurcation of a secured claim in real property that is the debtor's principal residence violates section 1322(b)(2) for three reasons: 1) the plain meaning of that section prohibits such a modification; 2) the general provisions of section 506 cannot prevail over the specific provisions of section 1322(b)(2); and 3) the prohibition against modification of the rights of residential lenders was enacted in response to the Congressional perception that these lenders perform a valuable social function.

Other arguments advanced by *amici* included the following: 1) bifurcation provides a windfall to Chapter 13 debtors; 2) bifurcation results in home mortgage lenders receiving worse treatment in Chapter 13 than other secured creditors; and 3) bifurcation does not advance the fresh start policy of the Bankruptcy Code.

Noting the four circuit court opinions adopting the Noblemans' position, *see In re Sapos, supra, In re Hart, supra, In re Wilson, supra,* and *In re Hougland, supra,* and the Supreme Court's decision in *Dewsnup,* which the Fifth Circuit stated "lends support to this view that bifurcation is impermissible," 968 F.2d at 487, the *Nobleman* court began its discussion of the issue with an invocation of the well known rule of statutory construction that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters.'" *Id. quoting United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The court found that section 506(a), which generally applies in Chapter 7, 11, 12, and 13 cases, *see* 11 U.S.C. § 103(a) ("... chapters 1, 3, 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title....") and section 1322(b)(2), which only applies in Chapter 13 cases, conflict. It further stated that under rules of statutory construction "[i]f the statutes conflict, a generally accepted tenent of statutory construction is that the general language of a statute does not 'prevail over matters specifically dealt with in another part of the same enactment.'" 968 F.2d at 488, *citing, inter alia, In re Russell,* 93 B.R. 703, 705 (D.N.D.1988); *Landmark Land Co. v. Office of Thrift Supervision,* 948 F.2d 910, 912 (5th Cir. 1991); *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932). Accordingly, the Fifth Circuit held that the specific language of section 1322(b)(2) prevails over the general language of section 506(a). The court added the following:

Moreover, section 1322(b)(2) describes its subject matter as the modification of "the *rights of holders of*" claims, not as the modification of *claims* as such; thus, the section can properly be read as *excepting* from its reach modification of "*the rights of holders of* ... a claim secured only by a security interest in real property that is the debtor's principal residence...." Therefore, even if the entirety of such a claim is not a secured claim (as per section 506(a)), the rights of a holder of such a claim may not be modified under section 1322(b)(2).

968 F.2d at 488 (emphasis in original).

The Court of Appeals for the Fifth Circuit also relied upon the legislative history of section 1322(b)(2), which it reviewed in *Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984). In *Grubbs,* the court noted that the legislative intent, which appeared in the form of a "compromise agreement," was not to permit any modification of a claim secured by a debtor's principal residence. Thus, the court held that the Noblemans' plan ran afoul of section 1322(b)(2).

The court in *Nobleman* mentioned the contrary authority in the Second, Third, Ninth and Tenth Circuits. However, it did not discuss the rationales of the other circuit courts in reaching their decisions, particularly the post-*Dewsnup* decisions of the Third Circuit in *Sapos* and the Second Circuit in *Bellamy.*

In *Sapos,* the issue before the court was whether the district court erred in approving a plan that included arrearages as part of the creditor's allowed secured claim and a payment schedule pursuant to which the debtor would not pay off the arrearages and the allowed secured claim before the expiration of the plan. 967 F.2d at 920. Like the Court of Appeals for the Second Circuit in *Bellamy,* the *Sapos* court determined that the *Dewsnup* holding "is limited to Chapter 7 liquidations only and does not reach reorganizations under Chapter 13." *Id.* at 921. The court noted that in *In re Wilson, supra,* it previously had concluded that application of section 506(a) to cramdown a creditor's claim does not modify the claim under section 1322(b)(2) because the secured claims protected by section

**14**

1322(b)(2) are those that remain after application of section 506(a). *In re Sapos*, 967 F.2d at 925.

In *Sapos*, the debtor proposed a Chapter 13 plan that provided for payment of an allowed secured claim of $17,000. This sum included prepetition arrearages of $11,188.12. The debtor proposed to pay the claim over approximately 63 months at 13.5% interest, leaving the mortgagee with a substantial unsecured claim that was to be paid *pro rata* along with other unsecured claims at the rate of $46 per month for 28 months. The collateral for the mortgage included household appliances, deemed fixtures, in addition to the principal residence.

On appeal, the mortgagee argued that the debtor's plan was deficient because it failed to cure the default within a reasonable amount of time, *see* 11 U.S.C. § 1322(b)(5),[6] and because the inclusion of the arrearages in the secured claim did not constitute curing the default. The Court of Appeals for the Third Circuit held that the admixture of arrearages and payment of the balance due on the mortgage principal did not accord with section 1322(b)(5). Specifically, the court adopted the view of the bankruptcy court in *In re Cole*, 122 B.R. 943 (Bankr.E.D.Pa.1991), where the court determined that section 1322(b)(5)'s requirement that arrearages must be cured within a reasonable amount of time means that the arrearages must be cured within the duration of the plan, a period that statutorily cannot under any circumstances exceed five years. The lower court did approve a schedule for maintaining payments of unpaid mortgage principal, however, even though "[t]he last payment is due after the date on which the final payment under the plan is due." *See* 11 U.S.C. § 1322(b)(5). The rationale of the *Cole* court was that the debtor could not cramdown the arrearages or alter the terms of payment on her mortgage by means of section 506(a) since this would reward a

debtor for failure to keep mortgage payments current. Notably, the Court of Appeals for the Third Circuit emphasized "that section 506(a) is 'inapplicable to any pseudo-'secured claim' for mortgage arrears.'" 967 F.2d at 928, *quoting In re Vitelli*, 93 B.R. 889, 895 (Bankr.E.D.Pa. 1988).

In *In re Bellamy*, 962 F.2d 176 (2d Cir. 1992), the Court of Appeals for the Second Circuit considered an adversary proceeding pursuant to which the debtors proposed to bifurcate the claim of a mortgagee bank, discharge the undersecured portion of the bank's allowed claim, void the mortgage lien to the extent of its undersecured portion pursuant to 11 U.S.C. § 506(d), and reinstate the mortgage in its "stripped down" amount pursuant to 11 U.S.C. § 1322(b)(5).

Unlike the Court of Appeals for the Fifth Circuit, the Second Circuit, *citing In re Hart*, 923 F.2d at 1413, *In re Wilson*, 895 F.2d at 127, and *In re Hougland*, 886 F.2d at 1183, rejected the Bank's assertion that section 1322(b)(2) prohibits modification of its right to full payment of the note. The court held that section 1322(b)(2) prohibits modification of a mortgage lender's rights "only insofar as the mortgagee holds a secured claim" *after* application of section 506(a). 962 F.2d at 179.

The Second Circuit first addressed the bank's contention that section 506(a) is not applicable because section 1322(b)(2) refers to "rights", a point emphasized by the Fifth Circuit and mortgagees' counsel in these proceedings. According to the bank, "rights" connotes a broader concept than claims. Consequently, a creditor's rights are to be safeguarded regardless of how their claims are classified. *Id.* (emphasis in original). The court phrased the issue as "whether the 'rights' to which § 1322(b)(2) refers include the mortgagees' rights concerning its *claim* or its rights with respect to its *secured claim*." *Id.* The court con-

---

**6.** Section 1322(b)(5) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and mainte-

nance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

cluded that the latter construction of the statute was appropriate. It reasoned that a contrary construction "would be directly contrary to one of the Code's cornerstones, aimed at making a fundamental change from the Bankruptcy Act, that treatment under the Code turns on whether a *claim* is secured or unsecured, not on whether a *creditor* is secured or unsecured." *Id.* (emphasis in original, citations omitted). While recognizing the merit in the bank's argument that section 506(a) does not itself affect a creditor's right to payment, the court determined that claim bifurcation did not modify the bank's rights but simply determined how the right to payment would be satisfied. *Id.* at 180, *citing In re Hart,* 923 F.2d at 1411.

The court next rejected the bank's argument that the entire claim, whether fully secured or not, may not be modified since the claim referred to in the "other than" clause of section 1322(b)(2) is any "right to payment, whether or not such right is ... secured or unsecured." *See* 11 U.S.C. § 101(5)(A) (defining the term "claim"). Noting the rule of statutory construction known as the rule of the last antecedent, the court stated that "[t]he 'other than' clause [in section 1322(b)(2) ] is most logically read to those words that precede it: 'secured claims.' " 962 F.2d at 180 (citations omitted). Accordingly, the court held that "§ 1322(b)(2) protects from modification the rights of a holder of a certain type of *secured claim*—one for which the only security is real property that is the debtor's principal residence." *Id.* at 181 (emphasis in original). Thus, the court harmonized section 506(a) and 1322(b)(2) to avoid the very conflict the Fifth Circuit was unable to resolve in *Nobleman.*

With respect to the legislative history that the Fifth Circuit found persuasive, the Court of Appeals for the Second Circuit found that the legislative history did not demonstrate that bifurcation is a modification proscribed by section 1322(b)(2), particularly since residential mortgage holders with secured claims still are afforded protection against alteration of the " 'size and timing of installment payments ... or ... other provisions of the secured creditors'

contract....' " 962 F.2d at 182. *citing* Bankruptcy Laws Commission's Report, H.R. Doc. 93–137, Pt. 2, 93rd Cong. 1st Sess. (205) (1973).

In this Court's view, the Second Circuit's analysis surpasses that of the Fifth Circuit in *Nobleman.* However, the divergent conclusions reached by the circuit courts highlight the difficulty confronting bankruptcy courts dealing with statutory provisions, legislative history, and policy considerations that are far from definitive.

## IV. DECISIONS IN THE FIRST CIRCUIT

The United States Court of Appeals for the First Circuit has yet to rule on the issue now before the Court. Additionally, a split has developed within the circuit on the issue. *Compare In re Lopez,* 138 B.R. 348 (D.P.R.1992); *In re Cardinale,* 142 B.R. 42 (Bankr.D.R.I.1992); *In re Loader,* 128 B.R. 13 (Bankr.D.Mass.1991); *and In re DiQuinzio,* 110 B.R. 628 (Bankr.D.R.I. 1990) *with In re Mitchell,* 125 B.R. 5 (Bankr.D.N.H.1991). *Cf. In re Cullen,* 150 B.R. 1 (Bankr.D.Me.1992).

Prior to *Dewsnup,* Chief Judge Queenan, sitting in the western division of this court, held, in an opinion representative of others in this circuit, that bifurcation of claims secured by a debtor's residence was not an improper modification of the mortgage. *In re Loader, supra.* He reasoned that "[n]othing in either § 506 or § 1322(b)(2) suggests that the term 'secured claims' appearing in the latter section is to be given any different meaning in § 1322(b)(2) than in other provisions of the Bankruptcy Code." 128 B.R. at 15. He noted that since Congress made a specific exception to the bifurcation principle in section 1111(b)(2), if an exception to bifurcation had been intended by Congress in the Chapter 13 context, it would have done so expressly in section 1322(b)(2). Judge Queenan found further support for Chapter 13 lien bifurcation in the legislative history, observing that the final version was a compromise between the House and the Senate. In his view, "[t]here is nothing [in the legislative history] to suggest that

if any of the claim is secured the entire claim shall be treated as secured." *Id.* Judge Queenan rejected the mortgagee's arguments that lien bifurcation left section 1322(b)(2) without a meaning, reasoning that "[i]t is only the unsecured portion that may be modified." *Id.* at 16. He further rejected the argument that the specific provision of section 1322(b)(2) controls over the general provision of section 506(a): "It would be twisting the plain meaning of words to conclude that a "secured claim" under § 506(a) is not among the "secured claims" dealt with in § 1322(b)(2). *Id.* Obviously, Judge Queenan's decision presaged that of the Second Circuit in *Bellamy.*

## V. DISCUSSION

### A. *Bifurcation*

In view of the weight of circuit court authority and authority within the First Circuit, this Court concludes that *Dewsnup* is not determinative of the issue now before the Court and does not prohibit lien bifurcation in cases involving mortgages secured solely by principal residences of Chapter 13 debtors. *Dewsnup* held that section 506(d) cannot be used as a cramdown provision in Chapter 7 cases. *Dewsnup* makes clear that the unilateral restructuring of mortgage debt in a Chapter 7 case is improper. The Court in *Dewsnup* expressly limited its analysis to section 506(d) and confined its decision to the Chapter 7 case before it. It did not rule that either bifurcation or "lien-stripping" is impermissible outside of Chapter 7. *See Dewsnup v. Timm,* — U.S. at ——, 112 S.Ct. at 778. Nowhere in *Dewsnup* did the Court disapprove of bifurcation under section 506(a) in the context of Chapter 13 reorganization cases. Thus, this Court finds the reasoning of the Second Circuit in *Bellamy* to be persuasive: section 1322(b)(2) only prohibits modification of the

secured portion of the mortgage after the amount of the secured claim has been determined under 11 U.S.C. § 506(a).

■ To summarize, bifurcation of a mortgagee's claim under section 506(a) is not a modification of the secured claim of the mortgagee because valuation of the real estate pursuant to section 506(a) is merely a determination of secured status. Section 506(a) simply is a prerequisite to implementation of the cramdown provision of section 1322(b)(2) (as well as the cramdown sections of Chapters 11 and 12). *See* 11 U.S.C. § 103(a). It is not an independent basis for cramdown as *Dewsnup* makes clear. Bifurcation is not an alteration of the mortgage, rather it is a recognition of the legal status of the creditor's interest in the debtor's property. The prohibition against modification is triggered *after* the determination of the allowed amount of the secured claim.

Policy considerations also support a restrictive application of *Dewsnup* and the present interpretation of section 1322(b)(2). If *Dewsnup* and section 1322(b) were interpreted to prohibit the limited cramdown permitted in Chapter 13 cases, lenders would invariably insist that extensions of credit be secured by worthless mortgages. *See In re Lopez,* 138 B.R. 348, 350 (D.P.R. 1992). Contrary to the mortgagees' assertion that lien bifurcation would be a windfall to debtors, denial of bifurcation would be a windfall to mortgagees whose worthless unsecured mortgages would continue to encumber debtors' homes to the extent of the debt after Chapter 13. This result runs counter to the reorganization provisions of Chapter 13 premised upon the retention of assets and the fresh start policy of the Bankruptcy Code. *See In re Bellamy,* 962 F.2d at 186.

Federal Home Loan Mortgage Corp. argues that section 1325(a)(5) [7] mandates pay-

---

**7.** Section 1325(a)(5) provides in relevant part:
(a) Except as provided in subsection (b), the court shall confirm a plan if— ...
(5) with respect to each allowed secured claim provided for by the plan— ...
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim....
11 U.S.C. § 1325(a)(5).

ment of the secured portion of the bifurcated claim within the term of a debtor's plan. Accordingly, it maintains that the debtors' interpretation of sections 506(a) and 1322(b)(2) in these proceedings does not help most Chapter 13 debtors retain their houses since the mortgages secured by those houses would have to be paid through Chapter 13 plans within three or at most five years—a nearly impossible feat if the mortgage originally was amortized over 15 or 30 years prior to cramdown. However, as the Second Circuit recognized, this argument "confuses the distinction between modification and bifurcation and undermines the purposes of Chapter 13." *In re Bellamy*, 962 F.2d at 185. The Bankruptcy Code permits the holder of a secured claim to be satisfied through compliance with section 1322(b)(5) without acceleration of the mortgage pursuant to section 1325(a)(5). *Id. See also* 1 Keith M. Lundin, *Chapter 13 Bankruptcy* ¶ 5.47 (1991).

As the Court in *In re Taras, supra,* observed with respect to Chapter 13 reorganizations as opposed to Chapter 7 liquidations:

> Valuation, in the context of a reorganization plan, is fixed at the time of plan confirmation, and while a § 506 proceeding, in a Chapter 7 case, fixes value as of the date of the bankruptcy filing. An undersecured or totally unsecured claim which is liquidated in the reorganization process does not "pass through" it. Therefore, the concern that lien "pass throughs" will be affected is not in issue when § 506(a) is utilized in the plan confirmation process. Congress was not ambiguous in the least in stating, in § 506(a), that, in the reorganization process, allegedly secured claims can be bifurcated into "truly secured" and "truly unsecured" portions.

136 B.R. at 949–50 (citations omitted). In *Taras,* the bankruptcy court did not rule that "lien stripping" was permissible if it extended beyond the reorganization process, as the debtors intended to pay the secured claim at issue within the time frame of their Chapter 13 plan. However, the Second Circuit in *Bellamy* did so rule

by affirming the judgment of the district court which, in turn, affirmed the bankruptcy court's judgment for the debtors on their lien avoidance complaint. As the Second Circuit stated, the Bellamys, through their adversary proceeding, "sought to relegate the mortgagee to the status of an unsecured creditor with respect to the undersecured portion of its allowed claim . . . , discharge that unsecured debt with other unsecured claims, *see* 11 U.S.C. § 1322(b)(1), void the mortgage lien to that extent, 11 U.S.C. § 506(d), and reinstate the mortgage in its reduced—"stripped down"—amount. *See* 11 U.S.C. § 1322(b)(5)." 962 F.2d at 178. The court stated: "[i]n light of the goals of Chapter 13, § 1322(b)(2) and (5) must be read as allowing a debtor to reinstate in *its stripped down* form a residential mortgage that comes due beyond the life of the plan." *Id.* at 185 (emphasis added). Accordingly, this Court shall follow *Bellamy* and authorize bifurcation of home mortgages on debtors' principal residences and the avoidance of the unsecured portions of the liens in Chapter 13 reorganization cases.

B. *Amount and Allocation of Payments*

■ After bifurcation, a claim secured by a residential mortgage has three components: a secured claim to the extent of the property's value, an unsecured claim for the balance of the debt, and a claim for any arrearages for unpaid installments due on the petition date. Lundin, *supra* at ¶ 4.35. An examination of the permissible treatment of all three components is warranted.

■ Courts unanimously agree that, by virtue of the anti-modification provision of § 1322(b)(2), payments on the secured claim must remain the same under the plan as under the contract between the debtor and the lender. *See, e.g., In re Honett,* 116 B.R. 495 (Bankr.E.D.Tex.1990); *In re Hayes,* 111 B.R. 924 (Bankr.E.D.Or.1990). A debtor cannot change the amount or timing of the monthly payment with respect to the secured portion of the mortgage. The allowed amount of the secured

claim must be paid in accordance with the contract. "The prohibition against modification means that the debtor cannot change the terms of the original mortgage contract." *Lundin, supra* at § 4.30. Notwithstanding bifurcation, the regular monthly payment must be paid in accordance with the mortgage contract. *Id.* ¶ 4.35.

■ The second component, the unsecured portion of the bifurcated claim, may be satisfied by payment of the value that would be paid to unsecured claims if the estate were to be liquidated under Chapter 7 in accordance with the so-called "best interest of creditors test." 11 U.S.C. § 1325(a)(4).[8]

■ The method by which a plan may allocate prepetition mortgage arrearages is the subject of considerable dispute, however. The issue is whether a prepetition mortgage arrearage should be allocated to the secured portion of the claim or to the unsecured portion. If the latter, the arrearage would not have to be paid in full to cure the default in the mortgage.

The overwhelming majority of courts that have considered this issue have concluded that a Chapter 13 debtor may not allocate the mortgage arrearages owed on the petition date to the unsecured portion of the mortgage. *See, e.g., In re Cole*, 122 B.R. 943 (Bankr.E.D.Pa.1991); *In re Honett*, 116 B.R. 495 (Bankr.E.D.Tex.1990); *In re Hyden*, 112 B.R. 431 (Bankr. W.D.Okla.1990). The rationale for the view prohibiting treatment of arrearages as unsecured debt is that Congress, in permitting deacceleration and curing of defaults over a reasonable time under subsection 1322(b)(5), intended to provide credi-

tors owed long-term secured debt assurance that arrearages would be paid in full. *In re Hyden*, 112 B.R. at 433. This Court perceives no reason to depart from the majority view. Accordingly, prepetition mortgage arrearages must be paid in full and cured by payment within a reasonable time, namely within a maximum plan term of 60 months.

■ Additionally, the technique of allocating arrearages to the secured portion of the bifurcated claim is equally impermissible under the Third Circuit's decision in *In re Sapos*. In that case, the court stated: "[w]e hold that the arrearages do not qualify as a 'secured claim' subject to a section 506(a) cram down...." 967 F.2d at 928. In short, as the *Cole* court stated: " 'the curing of defaults pursuant to section 1322(b)(5) is a right conceptually distinct from chapter 13 cramdown,' strongly suggesting that mixing the issue of a § 506–driven 'cramdown' with a cure of mortgage arrears under § 1322(b)(5) is inappropriate." 122 B.R. at 950 (citation omitted).

■ This Court views the curing of arrearages through Chapter 13 plans as a condition or obligation that must be satisfied in order for debtors to invoke section 506(a) to bifurcate mortgage claims. The obligation to satisfy arrearages is analogous to curing defaults in executory contracts pursuant to 11 U.S.C. § 365(b). Moreover, regardless of whether arrearages are technically secured or unsecured, this Court views their payment in full within the plan as part of section 1325's good faith requirement ("... the court shall confirm a plan if— ...(3) the plan has been proposed in good faith...." 11 U.S.C. § 1325(a)(3)).[9] The issue of whether inter-

---

**8.** Section 1325(a)(4) provides:
(a) Except as provided in subsection (b), the court shall confirm a plan if— ...
    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date....
11 U.S.C. § 1325(a)(4).

**9.** The Court notes that the issue of whether interest is payable on arrearages, like so many

in Chapter 13, is controversial. Some courts have ruled that debtors must pay interest as an element of curing defaults without regard to the underlying contract. *Compare Wade v. Hannon*, 968 F.2d 1036, *cert. granted, Rake v. Wade*, — U.S. ——, 113 S.Ct. 459, 121 L.Ed.2d 367 (1992) (interest allowed) *and Cardinal Fed. Sav. & Loan Ass'n v. Colegrove (In re Colegrove)*, 771 F.2d 119 (6th Cir.1985) (same) *with Shearson Lehman Mortg. Corp. v. Laguna (In re Laguna)*, 944 F.2d 542 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1577, 118 L.Ed.2d 219 (1992) (no interest allowed); *Landmark Fin. Serv. v.*

est is allowable on the outstanding arrearages has not been raised or briefed by the parties and, therefore, is reserved for another day.

The Court notes that in the Syverins' case, the debtors propose to pay the mortgage arrearage to Federal Home Loan Mortgage Corp. in full. This plan provision comports with the Court's holding. However, in the Richards' case, the debtors treat the $20,000 in arrearages owed to Citicorp Mortgage, Inc. as an unsecured claim to be paid a 20% dividend along with the other unsecured claims. This proposed treatment is clearly proscribed by the Court's ruling today.[10]

## VI. CONCLUSION

█ In summary, this Court shall permit Chapter 13 debtors to propose plans that bifurcate residential mortgages into secured and unsecured claims, treat the secured claim in accordance with the contract, avoid the lien to the extent the lien is unsecured, cure all prepetition mortgage arrears through payment in full over a reasonable time not to exceed the term of the plan, and provide for payments on the unsecured portion of the claim in an amount not less than unsecured creditors would receive in a Chapter 7 case. To effectuate bifurcation and lien avoidance, a debtor must commence an adversary proceeding pursuant to Fed.R.Bankr.P. 7001(2) to determine the extent of the mortgagee's lien.

Hall (In re Hall), 918 F.2d 1150 (4th Cir.1990) (same); Appeal of Capps, 836 F.2d 773 (3d Cir. 1987) (same) and Forster Mortg. Corp. v. Terry (In re Terry), 780 F.2d 894 (11th Cir.1986) (same).

10. The Durosiers' plan suggests they were current on their payments to First NH Mortgage Corp., as no arrearages were identified in their Chapter 13 plan.