## Edward M. Ciejek

### V.

## David E. Laird, Jr.

Record No. 871167

June 9, 1989

Present: All the Justices

*John N. Clifford (Clifford and Duke, P.C.,* on briefs), for appellant.
*David W. Drash (Beale, Wright, Denton, Balfour & Davidson, P.C.,* on brief), for appellee.

Justice Russell delivered the opinion of the Court.

A debtor conveyed to his creditor personal property upon which the creditor had perfected a security interest. We must determine whether that conveyance, by operation of law, destroyed the creditor's lien position, leaving the property vulnerable to the claims of other creditors.

The facts are stipulated. David E. Laird, Jr., and his wife (collectively, Laird) owned a tract of unimproved land in Hanover County. On October 1, 1981, they entered into a written commercial lease, demising the land to Pocono Nurseries, Inc. (Pocono). Pocono occupied the land and conducted a nursery business thereon, erecting greenhouses and other facilities. Edward M. Ciejek (Ciejek) lent business capital to Pocono, secured by a security agreement dated August 1, 1982, which gave Ciejek a lien upon the greenhouses and other property which Pocono had at the nursery. In 1983, Ciejek perfected his security interest by filing a financing statement with the Clerk of the State Corporation Com-

mission and with the Clerk of the Circuit Court of Hanover County.

Pocono suffered financial reverses, defaulted on Ciejek's loan and other obligations, and filed a Chapter 11 bankruptcy petition in 1984. On December 11, 1984, the bankruptcy court entered an order rejecting the lease between Pocono and Laird as an asset of the bankrupt's estate. The order directed Pocono to surrender possession of the land to Laird. Pocono complied, vacating the land but leaving behind the greenhouses and other property covered by Ciejek's security interest. At the time, the statutory bankruptcy stay prevented Ciejek from enforcing his security interest upon Pocono's assets remaining on Laird's land.

In 1986, Ciejek obtained a release of the bankruptcy stay. On August 26, 1986, Pocono entered into a written agreement with three of its secured creditors, one of whom was Ciejek, transferring to each creditor title to the property covered by that creditor's respective security interest, "to avoid foreclosure or similar proceedings to enforce said liens." The creditors agreed to "accept said items to be applied to the satisfaction of the outstanding loans to Pocono." Pocono agreed that the transfers were not given as preferences, but were given only to avoid foreclosure. Pocono also agreed that in the event the proceeds of sale of the property should exceed the amount of the liens thereon, the surplus would be paid to Pocono's trustee in bankruptcy. The agreement also contains the following paragraph:

> 8. All parties hereto do waive any and all claims relating to the aforesaid liens and security agreements which they may have against any other party.

Ciejek did not release his security agreement or financing statements. He made demand upon Laird for the greenhouses and other items left on the site by Pocono, referring to language in Pocono's lease which provided that any improvements installed on the land during the term of the lease would remain Pocono's property and that Pocono might remove the same "at any time." Laird, citing other lease language which provided that Pocono "shall not charge Landlord for any . . . property left by Tenant on the property upon termination of this lease," refused to surrender the property.

Ciejek filed a bill of complaint in 1987, praying for a mandatory injunction to permit his entry onto the land to remove the property, or alternatively, damages for the property's value and rental value during the time of its detention. Laird filed a motion for summary judgment, contending that the agreement of August 26, 1986, had caused Ciejek's security interest to merge into his ownership, that Ciejek's lien position was thus lost, that Pocono had relinquished its interest in the property by executing the agreement, that the lease had been effectively terminated by the action of the bankruptcy court, and that all property left on the land after termination passed to Laird by the terms of the lease.

No evidence was taken. The court granted Laird's motion for summary judgment by order entered July 20, 1987, and we granted Ciejek an appeal. The dispositive question is whether Ciejek's security interest merged into his title, vitiating his lien position *vis-a-vis* Laird.

■ Professor Glenn, discussing the doctrine of merger in equity, wrote:

> [M]erger of interest, in a technical sense, has a very narrow place here. The point is that merger is a technical rule at best, and so, even though two rights become united in one person, a court of equity will keep them separated if that is required by the outstanding claim of a third party or is necessary in view of the proprietor's own situation. This is often described as a matter of intention, but in reality it is a "rule of law," that is, it is a principle that guides our courts of equity when the facts are clear. Perhaps Sir George Jessel put it as well as can be when he said "If there is no reason for keeping it [the outstanding interest, now acquired], then equity will, in the absence of any declaration of his intention, destroy it; but if there is any reason for keeping it alive, such as the existence of another encumbrance, equity will not destroy it."

1 G. Glenn, Mortgages, Deeds of Trust, and Other Security Devices As To Land § 45.2 (1943) (footnotes omitted).

■ Our decisions are to similar effect. When a creditor takes title to the property which secures his debt, merger is not automatic, but depends upon the intention of the parties. In *Joyner* v.

*Graybeal*, 204 Va. 543, 545, 132 S.E.2d 467, 469 (1963), we said: "When one acquires absolute title to property which secures his debt, *in the absence of evidence showing a contrary intention* it is presumed that he intended to merge his secured interest into the legal title acquired" (emphasis added). In that case, we held that a merger had occurred, eliminating the creditor's security position because the creditor had shown a clear intention to extinguish his lien by making a written notation, after the transfer of title to him, that the property was subject to no liens. *Id.* at 545-46, 132 S.E.2d at 469. We based our ruling on the factual finding that there was "no evidence to rebut the presumption [of merger]." *Id.* at 546, 132 S.E.2d at 469.

More recently, in *Fox* v. *Templeton*, 229 Va. 380, 385, 329 S.E.2d 6, 9 (1985), we held, citing *Joyner*: "The acceptance of title in satisfaction of a preexisting security interest is presumed, *in the absence of evidence of a contrary intention*, to constitute a merger of the original secured interest into the legal title acquired." (Emphasis added.) Thus, the intention of the parties is controlling, creating an issue of fact.

Summary judgment has been available in equity since 1983, but in equity as at law, it is not to be entered if "any material fact is genuinely in dispute." Rule 2:21. The factual dispute with respect to the intention of the parties to the August 26, 1986 agreement is not resolved by the language of paragraph 8, quoted above. In that paragraph, the parties to the agreement expressly waive any security interests "which they may have against any other *party*." (Emphasis added.) In our view, that language may only be fairly construed as a waiver of lien claims by the parties to the agreement *inter se*, not as a waiver in favor of non-parties. Laird was, of course, not a party. The debtor and the three lien creditors who were parties to the agreement were attempting to make an arrangement for their mutual benefit, not for the benefit of those who might have adverse interests.

In addition to the question of the intention of the parties to the August 26, 1986 agreement, with respect to merger, other issues of material fact remain in dispute. The provisions of the lease between Laird and Pocono are ambiguous — susceptible of two or more interpretations concerning the landlord's right to acquire trade fixtures remaining on the land at the termination of the lease. Parol evidence, if available, may be admissible to resolve the ambiguity. The question whether the property was voluntarily

abandoned is also an issue of fact. Accordingly, we conclude that the court erred in entering summary judgment.

We will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*