In re Loretta J. ROMBACH, Debtor.

Loretta J. ROMBACH, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. SA 93–13051 JR.
Adv. No. SA 93–1344 JR.

United States Bankruptcy Court,
C.D. California.

Sept. 16, 1993.

Loretta J. Rombach, pro se.

Thomas D. Coker, Asst. U.S. Atty., Los Angeles, CA, for defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Prior to Loretta J. Rombach's ("Debtor") Chapter 7 petition under the Bankruptcy Code (the "Code"), the Internal Revenue Service ("IRS"), for unpaid personal income taxes, levied upon Debtor's interest in two timeshare weeks (the "Property"). At the time of the levy and at the date of the petition, the Property was undersecured. Debtor seeks to strip-down the undersecured portion of the lien pursuant to Code §§ 506(a) and 506(d).

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (1991) (the district courts shall have original and exclusive jurisdiction of all cases under title 11), 28 U.S.C. § 157(a) (1991) (authorizing the district courts to refer all title 11 cases and proceedings to the bankruptcy judges for the district), and General Order No. 266, dated October 9, 1984 (referring all title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## FACTS

On July 11, 1990, following an audit of Debtor's 1981 federal tax return, the IRS filed a Notice of Federal Tax Lien against Debtor in the amount of $23,238.43 (the "Lien"). During February, 1993, under Internal Revenue Code ("I.R.C.") § 6321, the IRS levied on Debtor's real property, several bank accounts and social security benefits.[1] As of March 15, 1993, the assessment and additional arrearages against Debtor totaled $39,364.71.

Debtor filed for protection under Chapter 7 of the Code on March 24, 1993. In addition to claims to other property of the estate, the IRS asserts a security interest in the Property. The current market value of the Property is less than the amount due on notes secured by deeds of trust. This was also the situation as of the levy and petition dates.

On April 28, 1993, Debtor filed this adversary proceeding seeking a determination that: (1) the taxes for the year 1981 are dischargeable; (2) the value of the Lien is zero; (3) the government is enjoined from enforcing collection on the debt; and (4) the IRS should turnover the levied bank account funds and social security benefits. On June 17, 1993, the IRS brought a motion for judgment on the pleadings. The IRS conceded that the taxes assessed for 1981 were assessed more than three years prior to the Chapter 7 petition and are dischargeable pursuant to Code § 727. At a June 14, 1993 hearing, I denied Debtor's motion for an injunction against the IRS and for turnover of the levied funds. The IRS agreed to turnover funds received on its levy of Debtor's Social Security benefits.

---

1. I.R.C. § 6321 provides that:

 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax or assessment penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

 26 U.S.C. § 6321.

The sole remaining issue is whether Debtor may avoid the Lien on the Property.

## DISCUSSION

 This motion for judgment on the pleadings is brought pursuant to Fed. R.Civ.P. 12(c) ("FRCP") which is incorporated by Bankruptcy Rule 7012(b). FRCP 12(c) provides that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. FRCP 12(c) is designed to provide a means of disposing of cases by reference to the pleadings when the material facts are not in dispute. 5A Wright & Miller, *Federal Practice & Procedure:* Civil 2d § 1367. Here, the facts are not in dispute. The legal issue that will determine the outcome of this adversary proceeding is whether a Chapter 7 debtor may strip down a non-consensual lien to the extent that it is undersecured. This matter is, therefore, ripe for judgment on the pleadings.

Debtor seeks to "strip down" the Lien on the Property pursuant to Code § 506(d). Strip down is an attempt by a debtor to set aside a lien of an undersecured creditor to the extent that the fair market value of the collateral is less than the claim. The debtor first seeks to bifurcate the undersecured creditor's claim into secured and unsecured claims. Section 506(a) provides that "[a]n allowed claim of a creditor secured by lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a).

The debtor then seeks to avoid the "unsecured" portion of the lien pursuant to § 506(d). Section 506(d) states that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...."

Here, Debtor moves to avoid the Lien in full since the value of the Property does not exceed the prior consensual liens on the Property. The IRS asserts that the Lien is unavoidable pursuant to the United States Supreme Court decision in *Dewsnup v. Timm,* 502 U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

In *Dewsnup,* a Chapter 7 debtor sought to strip down the unsecured portion of a consensual lien on real property. The debtor argued that the plain meaning of §§ 506(a) and 506(d) allow a debtor to avoid a lien to the extent that it is not an allowed secured claim under § 506(a).

The Court adopted the creditor's argument and held that § 506(d) does not allow the debtor to strip down a lien to the judicially determined value of the collateral if the claim is secured by a lien and has been allowed pursuant to Code § 502.[2] *Dewsnup,* 504 U.S. at ——, 112 S.Ct. at 777, 116 L.Ed.2d at 910. In essence, the Court decided that a lien is avoidable under § 506(d) only to the extent that a claim is disallowed under § 502.

The Court supported its decision using a historical approach. It acknowledged that pursuant to the Bankruptcy Act of 1898, liens on real property pass through bankruptcy proceedings unaffected. *Id.,* at ——, 112 S.Ct. at 778, 116 L.Ed.2d at 911. Although the Chapter 7 discharge extinguishes the personal liability of the Debtor, the *in rem* lien remains enforceable against the collateral.[3]

Debtor argues that the facts of this case are different from *Dewsnup,* and therefore, *Dewsnup* is not binding. Debtor asserts that *Dewsnup* involved a consensual lien that had actual economic value at the time the lien was perfected. The Court based its decision, in part, on the consensual nature of the lien since that was part of the bargain struck between the mortgagor

---

**2.** Section 502(a) states:
 A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).

**3.** *Id.* In his dissent, Justice Scalia argued that the majority view is contrary to the plain reading of §§ 506(a) and 506(d) and the term "allowed secured claim." *Id.,* at ——, 112 S.Ct. at 780, 116 L.Ed.2d at 913.

and the mortgagee. The Court stated that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain." *Id.*, at ——, 112 S.Ct. at 778, 116 L.Ed.2d at 911. Here, the Lien was placed on the Property involuntarily and, as of the dates of perfection and the date of the petition, the Lien had no economic value. However, just as the creditor in *Dewsnup* was entitled to any appreciation on the property during and after the case, the IRS has that same right. Although at the time of assessment the Property had no economic value, the Property may someday appreciate in value to the point where the Lien will have some economic value.[4]

The Court states at footnote 3 of *Dewsnup* that "... we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Id.* Despite footnote 3, the *Dewsnup* analysis regarding the interrelationships between §§ 502, 506(a) and 506(d) appear equally applicable to a non-consensual lien in a Chapter 7.[5]

Moreover, I cannot ignore *Dewsnup*'s premise that liens pass through bankruptcy unaffected. As the Court stated, "[a]part from reorganization proceedings ... no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt." *Id.*, at ——, 112 S.Ct. at 779, 116 L.Ed.2d at 912 (citing *Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 917–18, 29 L.Ed. 1004 (1886)). Based upon *Dewsnup,* I see no reason to treat a non-consensual lien different from a consensual lien when applying § 506(d).

**4.** *See* 26 U.S.C. § 6321 (stating that if a person neglects to pay any tax, after a demand, the United States shall have a lien upon all property and rights to property, whether real or personal, belonging to such person). This section does not require that the property have equity for the lien to attach.

**5.** *See In re Taffi,* 144 B.R. 105 (Bankr.C.D.Cal. 1992). Judge Zurzolo held that *Dewsnup* pro-

## CONCLUSION

*Dewsnup* prohibits a Debtor from stripping down the undersecured portion of a non-consensual lien. Judgment is granted in favor of the IRS.

Separate findings of fact and conclusions of law are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

hibited a Chapter 11 debtor from avoiding an IRS lien. He reasoned that § 506(d) was enacted as part of chapter 5 of the Code and Code § 103(a) provides that "[e]xcept as provided in Section 1161 of this Title, chapters 1, 3, and 5 of this Title apply under chapter 7, 11, 12 or 13 of this Title...." *Taffi* did not discuss whether or not *Dewsnup* should apply to a non-consensual lien.