### In re Robert Francis DOVIAK, Jane A. Doviak, Debtors.

### Bankruptcy No. 93–10525.

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Nov. 23, 1993.

---

Susan M. Pinner, Sp. Asst. U.S. Atty., Houston, TX, for I.R.S.

Frank Maida, Beaumont, TX, for debtors.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Motion of Robert Francis and Jane A. Doviak ("Debtors") to Fix Value of Tax Liens ("the motion") pursuant to regular setting in Beaumont, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. On April 27, 1993 the Internal Revenue Service ("IRS") properly filed a notice of tax lien in the office of the clerk of Jefferson County, Texas which reflected a lien against all of Debtors' property and rights to property, for their unpaid 1982 and 1983 income taxes, penalties, and interest in the total amount of $207,918.00. Subsequently, Debtors filed for relief under chapter 7 of the Code on April 27, 1993. The present dispute concerns the treatment of the IRS's lien.

Debtors' case was a "no-asset" case i.e. after claiming $15,645.00 in personal property exemptions, no assets remained to pay the claims of unsecured creditors. On September 2, 1993, Debtors received a discharge pursuant to § 727 of the Code relieving them of all in personam liability for listed debts including liability for 1982 and 1983 taxes. However, Debtors' discharge did not purport to affect the in rem liability of Debtors' exempt property for the vastly undersecured IRS tax lien. In an attempt to gain further relief, Debtors filed the present motion.

Debtors maintain that the IRS's tax lien consists of an allowed secured claim of $15,645.00 (based on the value of Debtors' ex-

empt property as of the petition date) and an allowed unsecured claim in the amount of $192,273.00. § 506(a)[1]. Debtors propose to allow the IRS claim as an allowed secured claim to the extent of the value of the property and void the tax lien to the extent it is unsecured. § 506(d). The IRS argues that such an action is prohibited by the Supreme Court's holding in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Debtors attempt to distinguish *Dewsnup* on the basis that its holding is only applicable in the case of consensual liens; the tax lien being nonconsensual. The matter was taken under advisement.

### DISCUSSION OF LAW

After a review of the authorities cited by the parties the Court must agree with the IRS that an analysis of this issue must begin and end with the Supreme Court's holding in *Dewsnup*. By way of background, the *Dewsnup* case involved an attempt by a chapter 7 debtor to "strip-down" the value of a lien to reflect the fair market value of abandoned real property. The lien was consensual in nature. Much as in this case, debtors proposed to utilize § 506(a) of the Code to establish the extent to which the lien was secured and § 506(d) to void the remainder of the lien. Finding that the term "allowed secured claim" did not necessarily have the same meaning between § 506(a) and § 506(d), the Supreme Court, with some reluctance, concluded the term "allowed secured claim" used in § 506(d) referred to a claim which is both allowed pursuant to § 502 and is secured by a lien. *Dewsnup*, —— U.S. at ——, 112 S.Ct. at 778. As a result, lien avoidance pursuant to § 506(d) was only available to the extent the claim of the creditor was disallowed. The effect of the Supreme Court's ruling was to continue the pre-Code practice whereby liens passed through the bankruptcy estate unaffected. *Dewsnup*, —— U.S. at ——, 112 S.Ct. at 778.

Debtors' main response to the impact of the *Dewsnup* opinion is to attempt to distinguish its applicability only to consensual liens. Debtors point to language in the *Dewsnup* opinion which suggests that 1)

---

**1.** Unless otherwise noted, all statutory references are to 11 U.S.C. (West 1993).

preservation of the mortgagor-mortgagee bargain is a pillar of the Supreme Court's holding and 2) the limited nature of the holding.[2] *Dewsnup*, — U.S. at —, 112 S.Ct. at 778. However, this Court is convinced that the reach of *Dewsnup* encompasses nonconsensual liens as well. First, the Court notes that the Supreme Court recognized that "[a]part from reorganization proceedings, no provision of the pre-Code statute permitted involuntary. reduction of the amount of a creditor's lien for any reason other than payment on the debt." *Dewsnup*, — U.S. at —, 112 S.Ct. at 779. Combined with the acknowledgment of the unaffected pass-through of liens through a bankruptcy estate this Court can discern no reason why *Dewsnup* is not fully applicable to nonconsensual liens. Second, the Court finds that the prefacing language used by the Supreme Court in limiting its holding was directed primarily towards the now resolved controversy involving "strip-downs" in chapter 13. *See Nobelman v. American Sav. Bank*, — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Therefore, Debtors' reliance on such language, as applied to the facts of this case, seems to this Court overbroad.

These conclusions are supported by statutory authority and the case law. Although not discussed in the *Dewsnup* case, § 522(c) of the Code is relevant to this discussion:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

.　　.　　.　　.　　.

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; . . .

By its very terms, § 522(c)(2)(B) creates an exception in favor of holders of tax liens as to a debtor's exempt property. In addition, the post-*Dewsnup* cases which have considered this issue in the context of chapter 7 have all held that § 506(d) is unavailable as a mechanism for reducing undersecured tax liens. *In re Rombach*, 159 B.R. 311 (Bankr.C.D.Cal. 1993); *In re Koppersmith*, 156 B.R. 537, 539 (Bankr.S.D.Tex.1993); *In re Warner*, 146 B.R. 253, 255 (N.D.Cal.1992). In two of these cases, the courts considered and rejected a distinction in § 506(d)'s applicability based on whether the lien was consensual or nonconsensual. *Rombach*, 159 B.R. at 314; *Warner*, 146 B.R. at 255–256. Moreover, the Supreme Court's opinion in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 n. 5, 109 S.Ct. 1026 n. 5, 103 L.Ed.2d 290 (1989) strongly suggests that § 506 does not distinguish between consensual and nonconsensual liens.[3] As stated by the Supreme Court, "had Congress intended § 506(b) to apply only to consensual liens, it would have clarified its intent by using the specific phrase, "security interest," which the Code employs to refer to liens created by agreement." The term "security interest" is not used in § 506(d); therefore, this Court cannot conclude that a valid distinction between consensual and nonconsensual liens is justified.

Finally, the Court will briefly address the Debtors' reliance on the holdings of a host of post-*Dewsnup* chapter 13 cases in support of their position. As a general matter, this Court is not convinced that such reliance is warranted. First, § 1322(b)(2) of the Code already gives debtors the option of "stripping down" liens for certain classes of secured claims. Second, Debtors' reliance on the case of *In re Richards*, 151 B.R. 8, 11–12 (Bankr.D.Mass.1993) for the proposition that *Dewsnup* does not prevent "strip-downs" in

2. In a preface to its ruling the Supreme Court stated: "We. . . . focus upon the case before us and allow other facts to await their resolution on another day." *Dewsnup*, — U.S. at —, 112 S.Ct. at 778.

3. In *Ron Pair*, the Supreme Court determined that holders of both consensual and nonconsensual oversecured claims were entitled to postpetition interest on their claims.

the context of certain consensual mortgages is misplaced. The *Richards* case involved a security interest in property consisting solely of real property comprising the debtor's principal residence. 11 U.S.C. § 1322(b)(2). The Supreme Court's subsequent decision in *Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) has had the effect of overruling *Richards.* Third, Debtors' reliance on the case of *In re Cullen,* 150 B.R. 1 (Bankr.D.Me.1993) is also inappropriate. In *Cullen,* a judgment creditor held a lien on property subject to two other security interests which rendered the judgment lien completely unsecured. Limiting the *Dewsnup* decision to its facts, the *Cullen* court, noting a distinction between consensual and nonconsensual liens, allowed the judgment lien to be avoided. The *Cullen* decision does not support Debtors' position. In *Cullen,* the court relied on language in § 1322(b)(2) which arguably permits a distinction between consensual and nonconsensual liens. By the express terms of § 103(h) this language is not applicable in chapter 7.

While it may appear to be unjust and in violation of the "fresh start" principle to allow a grossly undersecured tax lien to continue to encumber Debtors' exempt property post-discharge the Court finds that the *Dewsnup* decision and § 522(c)(2) mandates such a result. It is clear that Congress has carved out tax liens as an exception to the general lien avoidance provisions of § 522. It is also clear that the Supreme Court's interpretation of § 506 in the *Dewsnup* opinion requires undersecured liens to pass through chapter 7 bankruptcy proceedings unaffected by the proceeding except for the discharge of the personal liability of the debtor. It is certainly within the province of Congress to carve out tax liens and except them from the general lien avoidance powers of debtors as to their exempt property. It is also clearly within the province of Congress as interpreted by the Supreme Court in the *Dewsnup* case to leave undersecured liens attached to either exempt or abandoned property postdischarge. This Court has no choice but to follow that clearly expressed policy and deny the Debtors' Motion to Fix Value of Tax Lien.