CROSSROADS OF HILLSVILLE,
Appellant,

v.

Ronald E. PAYNE, Appellee.

Civ. A. No. 94–149–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 14, 1995.

William Francis Stone, Jr., Martinsville, VA, for appellant.

Robert Tayloe Copeland, Abingdon, VA, for appellee.

Memorandum Opinion

GLEN M. WILLIAMS, Senior District Judge.

This case is before the Court on appeal from a decision entered July 27, 1994, by United States Bankruptcy Court for the Western District of Virginia. In its opinion, the Bankruptcy Court granted Ronald E. Payne's Motion to Avoid in its entirety a judgment lien in favor of Crossroads of Hillsville who now appeals that decision. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a)(West 1993).

I.

On February 16, 1990, Crossroads of Hillsville ("Crossroads") obtained a judgment against Ronald E. Payne ("Payne") and James D. Burnette[1] in the amount of $9,290.84 plus costs and attorney's fees. Crossroads docketed this judgment in the Carroll County Circuit Court Clerk's Office on February 23, 1990. On October 22, 1991, Payne filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. At that time, Payne did not claim any exemption in his Carroll County real property in his Schedule C[2] nor did he file a homestead deed even though Payne owned a residence and adjoining lots in Carroll County.[3] Eventually Payne did file two homestead deeds in the Carroll County Circuit Court Clerk's Office on December 17, 1993. On January 13, 1994, the Bankruptcy Court granted Payne's motion to amend his Schedule C exemption listings to include his Carroll County real estate.

The Bankruptcy Court found that there were five (5) liens on the Carroll County property senior and superior to Crossroads' lien. These liens were: (1) a Deed of Trust

to First Bank & Trust of Floyd County for $88,362.34; (2) a second Deed of Trust to North Carolina National Bank for $52,000.00; (3) a judgment lien in favor of Terry's Inc. for $2,513.16; (4) a judgment lien in favor of General Parts, Inc. for $115,473.31, and (5) delinquent taxes in the amount of $4,500.00. The total amount of the liens superior to Crossroads' lien was $262,848.81. The Bankruptcy Court determined that Payne's Carroll County property had a value of $147,500.00 based upon the local tax appraisals.

The fourth lien in priority, the 1989 General Parts judgment, has a notation which states that "this judgment is assigned without recourse to Ronald E. Payne this 19th day of April, 1990." (Movant's Ex. 8.) On that same day, there is an Agreement of Sale and Transfer in which Payne transfers all his interest in RRR Partners to Ralph E. Payne and Richard E. Payne, the remaining members of RRR Partners, in exchange for endorsing and guaranteeing a promissory note and deed of trust dated April 19, 1990, payable to General Parts, Inc. in the amount of $100,473.31. (Movant's Ex. 9.)

The Bankruptcy Court, upon Payne's motion, avoided Crossroads' lien on December 11, 1992. Crossroads then requested that the Bankruptcy Court vacate its avoidance order and reopen the case due to the fact that Crossroads never received notification of the avoidance motion prior to the hearing. The Bankruptcy Court rescinded the avoidance order and reopened the case on November 24, 1993, but ordered Crossroads to pay a $120.00 charge in order to reopen the case. Subsequently, on January 11, 1994, Payne filed another motion to avoid Crossroads' lien. On July 27, 1994, the Bankruptcy Court again avoided Crossroads' lien in its

1. Jimmy N. Dalton ("Dalton") was also responsible for this debt but was not named in the judgment. On July 18, 1992, Dalton paid Crossroads $10,000.00 toward the debt owed by the three men. Dalton also offered to pay off the rest of the debt, but Crossroads instead elected to hold a check from Dalton in the amount of $5,455.00 and try to collect the balance of the debt from Payne. (Movant's Ex. 10.) Payne argued that this arrangement between Crossroads and Dalton fully satisfied the debt. This Court disagrees with Payne because Va.Code Ann. § 11–10 (Michie 1993) states that a creditor

can make any compromise with a co-obligor and release him from liability without impairing the creditor's rights against other co-obligors.

2. Schedule C is the bankruptcy form which the debtor uses to list the property which he or she claims as exempt.

3. Payne's Carroll County property at issue in this case is his residence and adjoining land, lots 13–18, inclusive, section B in the Forest Heights Drive Subdivision.

entirety. In its opinion, the Bankruptcy Court avoided any lien which impaired the homestead exemption, pursuant to 11 U.S.C. § 522(f), or exceeded the value of the property, pursuant to 11 U.S.C. § 506(d). *In re Payne*, 179 B.R. 480, 483 (Bankr.W.D.Va. 1994). The Bankruptcy Court felt that this holding assured the debtor a "fresh start" in his financial life. *Id.* Crossroads then appealed that decision to this Court.

## II.

■ Different standards of review exist in determining if a Bankruptcy Court erred in its ruling. In reviewing a Bankruptcy Court's decision, the standard of review for findings of fact is clear error, and the standard of review for any legal determinations is *de novo*. *In re Midway Partners*, 995 F.2d 490, 493 (4th Cir.1993). Therefore, this Court will first review the Bankruptcy Court's findings of fact for clear error.

■ The only issue of fact contested by Crossroads is whether a merger occurred on the $115,473.31 lien held by General Parts, Inc. when General Parts assigned its lien to Payne.[4] If a merger occurred, then the General Parts lien would be extinguished and would no longer have priority over the Crossroads' lien. The occurrence of a merger is determined by the intentions of the parties involved and is an issue of fact. *Ciejek v. Laird*, 238 Va. 109, 112, 380 S.E.2d 639, 641 (1989).

Crossroads contends that as soon as the lien held by General Parts as creditor was assigned to Payne as debtor, the lien was extinguished by the doctrine of merger because the creditor and debtor became one. Conversely, Payne argues that even though the judgment says it was assigned to him, the lien was really assigned to RRR Partners because RRR Partners had reached an agreement with General Parts about the debt Payne owed to General Parts. (Tr. at 45–48.) In *Ciejek*, the court held "[w]hen a creditor takes title to the property which secures his debt, merger is not automatic, but depends upon the intention of the parties." *Ciejek*, 238 Va. at 112, 380 S.E.2d at 641. Although this case involves a debtor obtaining a lien which is attached to property he already owns, as opposed to the opposite situation in *Ciejek*, the same merger principles apply: namely, that merger is not automatic, but depends upon the intent of the parties.

At the Bankruptcy Court hearing, Payne testified that the General Parts lien was not released when assigned to him and was never meant to be released. (Tr. at 45–46.) Also testifying at the hearing was the attorney for RRR Partners, David J. Hutton, who stated that Payne sold his interest in RRR Partners back to RRR Partners in exchange for RRR Partners guaranteeing a $100,473.31 note payable to General Parts and RRR Partners receiving from General Parts the lien against Payne. (Tr. at 52–58.) The language of the agreement states that Payne is selling all interest in RRR Partners in consideration for RRR Partners endorsing and guaranteeing a $100,473.31 promissory note payable to General Parts. (Movant's Ex. 9.) The Agreement of Sale and Transfer is anything but clear in what it purports to accomplish, however, there was sufficient evidence from the testimony of Payne and Hutton, in addition to some of the language of the agreement, in order for the Bankruptcy Court to find that the parties did not intend to cause a merger, but instead, meant for the lien to remain in force in favor of RRR Partners. Thus, it was not clear error to hold that there was no merger.

---

**4.** In its brief, Crossroads devotes considerable time complaining about another issue of fact but did not formally raise it as one of its nine arguments. Crossroads contends that the Bankruptcy Court erred in determining why Payne's property increased in value from the time of the filing of Payne's bankruptcy petition until the property was sold. The Bankruptcy Court held that at the time of filing of the petition, October 21, 1991, the value of the land was $147,500 based on the local tax appraisals. In January 1994, the property was sold for $185,000. The Bankruptcy Court found that the increase in the value of the land was due to Payne making "numerous improvements to the land." *See In re Payne*, 179 B.R. at 482, n. 4. Since there was no evidence offered to the contrary as to why the value of the property increased, it was not clear error for the Bankruptcy Court to hold it was due to Payne's own improvements.

## III.

The Court will now review *de novo* the Bankruptcy Court's decisions on issues of law. The Appellant, Crossroads, contends that there are eight (8) issues of law which the Bankruptcy Court decided incorrectly.[5] All eight of these arguments need not be individually addressed by this Court because some of these issues can be combined and a favorable ruling on others will extinguish the relevance of later issues. Therefore, this Court will decide these issues in an order that will hopefully make this Opinion easier to follow.

■ The first issue of law raised by Crossroads is:

[w]hether a bankruptcy debtor can claim an exemption in potential equity in Virginia real estate when he fails to file a Homestead Deed until more than two years following the originally scheduled date of the first meeting of creditors?

(Br. of Appellant at 1.) Payne filed a voluntary Chapter 7 Bankruptcy petition on October 22, 1991, and the First Meeting of the Creditors (a.k.a. "§ 341 meeting") was scheduled for December 11, 1991. Payne did not file any homestead deeds until December 17, 1993.

Under 11 U.S.C. § 522 (West 1993), a state may allow its residents to claim exemptions set out in the Bankruptcy Code or the state may establish its own exemptions. Virginia has decided to opt out pursuant to § 522 and set up its own exemptions and requirements for claiming the exemptions. Va.Code Ann. § 34–3.1 (Michie 1990). In order for a bankruptcy petitioner in Virginia to claim a homestead exemption, the petitioner must abide by Va.Code Ann. § 34–17 (Michie 1990) which reads in pertinent part:

[t]o claim an exemption in bankruptcy, a householder who files a voluntary petition in bankruptcy ... shall set such real or personal property apart on or before the fifth day after the date initially set for the meeting held pursuant to 11 USC § 341, but not thereafter.

If a bankruptcy petitioner does not abide by the Virginia prerequisites for filing a homestead deed, then the petitioner is not entitled to the exemption. *In re Emerson,* 129 B.R. 82, 84 (Bankr.W.D.Va.1991), *aff'd,* 962 F.2d 6 (4th Cir.1992). The language of § 34–17 is very clear: the petitioner must file a homestead deed either on or before the fifth day after the meeting of the creditors or else lose the exemption. This statutory law has been strictly enforced. *See In re Emerson, Id.; In re Wall,* 127 B.R. 353, 355 (Bankr.E.D.Va. 1991). Payne did not file his homestead deeds until two (2) years after the statutory deadline for claiming his exemption. Therefore, the homestead deeds should not have been accepted by the Bankruptcy Court and are invalid.

As Crossroads correctly pointed out in his appellate brief, this Court's ruling on the invalidity of the homestead deeds renders moot arguments number II and VI[6] raised by Payne in his brief. However, the fact that the homestead deeds are invalid does not end the analysis and may not affect the final result of this controversy.

■ The crucial issue in this case is whether Crossroads' lien on Payne's Carroll County property can be avoided pursuant to 11 U.S.C. § 506(d) (West 1993) of the Bankruptcy Code. Crossroads' contentions in arguments number IV, VII and VIII can be combined to claim that Crossroads' lien should not have been avoided under that Bankruptcy Code provision. 11 U.S.C. § 506 reads in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff

---

**5.** Crossroads had nine (9) issues in its appellate brief, but one of these was an issue of fact.

**6.** Paraphrasing these arguments, they are: (II) whether a debtor can amend his claimed exemption schedule when no notice was given to the judgment creditor, and (VI) whether a homestead deed which fails to describe with particularity the property or monetary amount claimed as exempt can be used to avoid a lien against that property.

is less than the amount of such allowed claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void[.] [7]

After this section was enacted into the Bankruptcy Code in 1984, most courts found that the plain language of § 506(a) meant that a creditor held a secured claim for the amount of the lien up to the value of the collateral and an unsecured claim for any amount of the lien over the amount of the value of the collateral. Likewise, according to the plain language of § 506(d), these same courts held that the unsecured portion of a creditor's lien is to be avoided.[8]

However, the United States Supreme Court changed the general understanding of what § 506 meant with its decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *See also In re Cerniglia*, 137 B.R. 722, 724 (Bankr.S.D.Ill.1992) (stating "lien stripping" under § 506(d) no longer valid because of *Dewsnup* ). In *Dewsnup*, the creditor had a $119,000 Deed of Trust on the debtor's land which was valued at $39,000. The debtor, pursuant to 11 U.S.C. § 506(d), wanted the Court to avoid the Deed of Trust for the amount above the value of the land, i.e. any amount above $39,000. The Supreme Court held that no amount of the lien could be avoided because § 506(a) is not a definitional provision and, thus, when the term "allowed secured claim" is used in § 506(d), the reader should not refer to the term's definition in § 506(a) to determine its meaning. *Dewsnup*, 502 U.S. at 415–17, 112 S.Ct. at 776–79, 116 L.Ed.2d at 910–11. Instead, the words "allowed secured claim" in § 506(d) should be read to mean any lien

that is an allowed claim [9] and also secured by underlying collateral regardless of the collateral's value. *Id.* at 415, 112 S.Ct. at 778, 116 L.Ed.2d at 910. Thus, a lien could not be avoided unless the lien was disallowed or not secured by any collateral. *Id.*

It is to be noted that the Court in *Dewsnup* was careful to strictly limit its holding to the facts of that particular case. *Dewsnup Id.* at 416–17, 112 S.Ct. at 778, 116 L.Ed.2d at 911. However, even though the particular facts of the *Dewsnup* case involved a consensual lien with a mortgagee-mortgagor relationship, as opposed to a nonconsensual judgment lien as in this case, subsequent cases have interpreted the *Dewsnup* decision to apply to all liens in a Chapter 7 bankruptcy whether consensual or nonconsensual.[10]

For example in the case of *In re Esler*, 165 B.R. 583 (Bankr.D.Md.1994), the Chapter 7 debtor owned a one-half interest in real estate which was valued at $125,000. The property had a first Deed of Trust on it for $110,117.76 as well as a judgment lien for over $100,000 in favor of Orix Credit Alliance ("Orix"). After deducting the Deed of Trust from the value of the property, the debtor's one-half interest in the property was $7,491.12. The debtor, under § 506(d), wanted to avoid the Orix lien for the amount of the lien above $7,491.12. The debtor tried to distinguish the *Dewsnup* decision by citing its limiting language and claiming the holding only applied to consensual mortgage liens. *In re Esler* at 584. The court disagreed and held that the *Dewsnup* decision was "equally applicable to consensual and nonconsensual liens." *In re Esler* at 584.

Likewise, the court in *In re Rombach*, 159 B.R. 311 (Bankr.C.D.Cal.1993) reached the

---

**7.** 11 U.S.C. § 506(d) has two exceptions neither of which are relevant to this case.

**8.** *See In re Crouch*, 76 B.R. 91 (Bankr.W.D.Va. 1987); *In re Lindsey*, 823 F.2d 189 (7th Cir. 1987); *In re Folendore*, 862 F.2d 1537 (11th Cir.1989); *In re O'Leary*, 75 B.R. 881 (Bankr. D.Or.1987); *In re Worrell*, 67 B.R. 16 (C.D.Ill. 1986); *In re Mays*, 85 B.R. 955 (Bankr.E.D.Pa. 1988); *But See In re McLaughlin*, 92 B.R. 913 (Bankr.S.D.Cal.1988); *In re Sloan*, 56 B.R. 726 (Bankr.D.Colo.1986); *In re Hoyt*, 93 B.R. 540 (Bankr.S.D.Iowa 1988).

**9.** Whether a lien is an allowed lien is determined by 11 U.S.C. § 502 which is not relevant to this case because neither party disputes that this claim is allowed under § 502.

**10.** The only post-*Dewsnup* Chapter 7 bankruptcy case which holds that *Dewsnup* only applies to consensual liens and not to nonconsensual judgment liens is *In re Kopstein*, 163 B.R. 573, 574 (Bankr.N.D.Cal.1994). However, this decision was reversed on appeal by the United States District Court for the Northern District of California in *Ellison v. Kopstein*, 171 B.R. 879 (N.D.Cal.1994).

same result. In this Chapter 7 case, the debtor owned real property that had a consensual first deed of trust on it which well exceeded the value of the property. There was also a nonconsensual IRS lien on the property which the debtor wanted voided pursuant to § 506(d). The debtor claimed that *Dewsnup* did not apply to nonconsensual liens and, therefore, the IRS lien could be avoided completely since there was no value left in the property once the first deed of trust was deducted. *In re Rombach* at 313. The court stated, "[b]ased upon *Dewsnup*, I see no reason to treat a non-consensual lien different from a consensual lien when applying § 506(d)" and declined to avoid the nonconsensual lien. *In. re Rombach,* at 314.

In yet another Chapter 7 case, *In re Doviak,* 161 B.R. 379 (Bankr.E.D.Tex.1993), the debtor owned property valued at well below the amount of the nonconsensual IRS tax lien levied on the property. Pursuant to § 506(d), the debtor tried to avoid the tax lien for the amount over the value of the property pointing to the limiting language of the Supreme Court decision and arguing that *Dewsnup* only applied to "consensual or mortgage type" liens and not to nonconsensual liens. *In re Doviak* at 380–81. The court disagreed and held that the decision applies to both consensual and nonconsensual liens. It stated "the *Dewsnup* opinion requires undersecured liens to pass through chapter 7 bankruptcy proceedings unaffected by the proceeding except for the discharge of the personal liability of the debtor." *In re Doviak* at 382. Therefore, regardless of whether this Court agrees or disagrees with the rationale of the *Dewsnup* decision, this Court is bound by its holding and, thus, Crossroads' lien can not be avoided by § 506(d).

■ In rendering its decision, the Bankruptcy Court relied heavily upon the princi-

ple that a debtor receives a "fresh start" when discharged from bankruptcy. The *Dewsnup* opinion has been criticized as destroying the "fresh start" policy.[11] However, the Supreme Court believed that the "fresh start" principle was only meant to limit the personal liability of the debtor after discharge and not extinguish the right of an *in rem* action against the property which has a lien attached to it. *Dewsnup,* 502 U.S. at 416–18, 112 S.Ct. at 777–78, 116 L.Ed.2d at 911–12; *See also In re Wrenn,* 40 F.3d 1162, 1164 (11th Cir.1994) (discharge in bankruptcy voids any judgment as to personal liability of the debtor but does not affect liability *in rem* ); *In re Rombach,* 159 B.R. 311, 313 (Bankr.C.D.Cal.1993) (discharge does not affect liability *in rem* and prepetition lien remain enforceable after discharge). Thus, even though Crossroads' lien can not be avoided under § 506(d), once Payne is discharged in bankruptcy, he is no longer personally responsible for the Crossroads debt, but Crossroads may still have an *in rem* action against the Carroll County property itself. Since this current matter is not an *in rem* action by Crossroads, this Court declines to look further into that issue.[12]

■ The final issue concerns the propriety of the Bankruptcy Court's requiring Crossroads to pay $120.00 to reopen the case when Crossroads was not given notice of the first avoidance hearing. Since the Bankruptcy Court found that the lack of notice to Crossroads did warrant the vacating of the original avoidance order, Crossroads should not have been required to pay $120.00 in order to reopen the case. The Bankruptcy Court did not need to reopen the case in order to vacate the Order because Bankruptcy Rule 9024, by incorporating F.R.Civ.P. 60(b), "permits relief from final orders where mistake, newly discovered evidence, fraud, and other

---

11. *Dewsnup* has not been received by the lower courts with complete praise. *See In re Richards,* 151 B.R. 8, 10 n. 4 (Bankr.D.Mass.1993) ("the Dewsnup opinion has been criticized as the strangest case of statutory interpretation in recent years"); *In re Dever,* 164 B.R. 132, 145 (Bankr.C.D.Cal.1994) (suggests that the Supreme Court should reconsider its decision since a debtor can achieve opposite results merely by converting a case from Chapter 7 to Chapter 11).

12. In light of the Court's decision that Crossroads' lien can not be avoided by § 506(d), Crossroads' argument number V is rendered moot. Argument V claims that a lien can not be avoided under § 506(d) if no party has filed a Proof of Claim.

**492**

reasons justify relief." 8 Lawrence P. King, *Colliers on Bankruptcy,* § 5010.06 (15th Ed.1994). Accordingly, the Clerk of the Bankruptcy Court shall refund the $120.00 payment to Crossroads.

### IV.

In conclusion, this Court holds that the Bankruptcy Court committed no clear errors in regard to issues of fact. However, the Bankruptcy Court should not have accepted the homestead deed because it was filed two (2) years after the statutory deadline. Likewise, Crossroads' lien on Payne's property should not have been avoided under 11 U.S.C. § 506(d) in light of the United States Supreme Court decision in *Dewsnup.* Also, Crossroads should not have been required to pay $120.00 to reopen the case when it was not given proper notice of the prior hearing.

An Order setting forth the holdings in this Memorandum Opinion will be entered this day.

As set forth in the Memorandum Opinion entered this day, it is hereby ADJUDGED and ORDERED that:

(1) the Bankruptcy Court's finding that no merger occurred on the General Parts' $115,473.31 lien when it was assigned to Payne is AFFIRMED;

(2) the Bankruptcy Court's finding that the homestead deeds filed by Payne are valid is REVERSED because they were filed over two (2) years after the statutory deadline;

(2) the Bankruptcy Court's finding that Crossroads' lien on Payne's Carroll County property is avoided under 11 U.S.C. § 506(d) is REVERSED, however, the lien does not apply to any property acquired by Payne since his discharge in bankruptcy and Payne is no longer personally liable for the debt after his discharge.

(3) the Bankruptcy Court's finding that Crossroads be required to pay $120.00 to reopen the bankruptcy proceedings is REVERSED and the Clerk of the Bankruptcy

Court is directed to refund the $120.00 to Crossroads.