**In re Keith Alfred WALKUP and Linda Ina Walkup, Debtors.**

**Keith Alfred WALKUP and Linda Ina Walkup, Movants,**

v.

**FIRST INTERSTATE, Lone Star Industries, Inc., Boyd G. Lester, Interstate Fuel Systems, Sierra Gypsum, Inc., United States of America, State of California, Payless Cashways, Inc., Point West Bank, California Pavement Maintenance Company, Inc., Pacific Coast Building Products, John Zanoni, Christensen Door Company, and Campbell's Carpets, Inc., Respondents.**

**Bankruptcy No. 94–20230–B–7.**

United States Bankruptcy Court, E.D. California.

May 2, 1995.

Robert T. DeMarco, Rancho Cordova, CA, for debtors.

Thomas M. Rohall, Lori M. Mersereau, Sp. Assts., U.S. Atty., Sacramento, CA, for I.R.S.

Kenneth Sanders, Chapter 7 Trustee, Sacramento, CA.

### *MEMORANDUM DECISION*

JANE DICKSON McKEAG, Bankruptcy Judge.

This motion presents the question of whether a junior lien held by the Internal Revenue Service (the "IRS") against the debtors' residence may be "stripped off" in a Chapter 7 bankruptcy case. Keith and Linda Walkup, the debtors herein (the "Debtors"), have sought this relief pursuant to 11 U.S.C. § 506(d).[1] The IRS contends that the holding by the United States Supreme Court in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), prohibits the result sought by the Debtors. As discussed

---

**1.** All future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

below, the court will deny the Debtors' request to avoid the IRS liens based on the application of 11 U.S.C. § 522(c)(2)(B), interpreted in light of the *Dewsnup* decision, to the facts at hand.

## I. *The Facts*

An understanding of the nature and extent of the liens against the Debtors' residence is important for purposes of the pending motion. According to the Debtors' motion, the following liens, in order of priority based on recordation date, were recorded against this property at the time of filing:

| | |
|---|---|
| Bank of America | $14,550 |
| Bank of Alex Brown | 50,254 |
| Lone Star Industries | 18,225 |
| Boyd G. Lester | 23,466 |
| Interstate Fuel Systems | 1,094 |
| Sierra Gypsum | 34,035 |
| United States of America | 349 |
| Payless Cashways | 12,119 |
| Point West Bank | 10,263 |
| State of California | 2,812 |
| Cal. Pavement Maintenance | 28,500 |
| State of California | 894 |
| Pacific Coast Building | 8,524 |
| State of California | 655 |
| John Zanoni | 52,622 |
| State of California | 266 |
| Christensen Door Company | 3,386 |
| State of California | 72 |
| Campbell's Carpets | 23,491 |
| United States of America | 19,908 |
| JTS Engineering | 44,587 |
| United States of America | 2,235 |

The dollar figures included in the above list reflect the amount of the lien as recorded against the property and do not take into account interest accruals.[2]

These liens may be divided into three categories. The Bank of America's consensual obligation is secured by a first deed of trust against the Debtors' property. It is unaffected by this motion. The liens in favor of the State of California and the United States of America are involuntary statutory liens that secure payment of delinquent tax obligations.[3] The balance of the liens against the Debtor's residence consist of abstracts of judgment.

■ The Debtors seek two different types of relief in this motion. First, they seek to avoid the judgment liens pursuant to 11 U.S.C. § 522(f). The only judgment lienholder that opposed the motion was the Bank of Alex Brown (now, First Interstate Bank ("FIB")). The question raised with respect to FIB's judgment lien was the *extent* to which the Debtors could avoid its lien. After a contested hearing, the court established the value of the property at $130,000. Because the Debtors are entitled to a homestead exemption of $75,000 pursuant to California Code of Civil Procedure 704.710, *et seq.*, this judgment lien will be reduced to the difference between the value of property and the combined amount of the Bank of America lien and the homestead exemption. This reduction represents the extent to which the FIB lien impairs the Debtors' homestead exemption pursuant to section 522(f). The remaining judgment liens, all of which are junior to FIB's, may be avoided pursuant to section 522(f).

The Debtors, by this motion, also seek to avoid the tax liens pursuant to section 506(d).[4] The IRS, however, disputes the Debtors' right to remove these liens and claims instead that its liens attach to the equity freed up for the homestead exemption.

## II. *Discussion*

The motion was brought pursuant to section 506(d) of the Bankruptcy Code. The parties initially focused on the question of whether the *Dewsnup* decision, which limits the ability of a Chapter 7 debtor to "strip down" liens, should be applied to the present facts. After an initial hearing, the court requested that the parties also address the impact of section 522(c)(2)(B) of the Bankruptcy Code on the Debtors' ability to avoid tax liens against exempt property.

---

2. The amounts secured by the various IRS liens have not been established. The parties have agreed, however, to defer consideration of this issue until the court decides the preliminary question of whether to permit avoidance of the liens.

3. The parties agree that a portion of the IRS claims secured by the tax liens in question is dischargeable.

4. The Debtors have resolved questions concerning tax liens held by State of California by stipulation with the State.

The IRS contends that section 522(c)(2)(B) provides special protection for valid tax liens against exempt property, including those in question in this case. As discussed below, the court agrees with the IRS' interpretation of this section, including the IRS' discussion of its relationship to section 506(d) of the Bankruptcy Code. *See* United States' Supplemental Points and Authorities, filed 4/3/95.

The Debtors, on the other hand, urge this court to approach these statutory provisions in two stages. They claim that the court should first examine the validity of the tax liens under section 506(d). Because they are admittedly unsecured, the Debtors would have them declared void. The Debtors then claim that section 522(c)(2)(B) has no application to these facts because these tax liens against their exempt property have already been declared void.

The court rejects the Debtors' approach because it completely undermines the clear language of section 522(c)(2)(B). However, even if this court were to adopt the two-step analysis urged by the Debtors, most case law subsequent to *Dewsnup* would not permit them to avoid these tax liens in the first instance. Accordingly, the court will deny the Debtors' request that the IRS liens be declared void pursuant to section 506(d).

## A. The impact of section 522(c)(2)(B).

■ Section 522(c)(2) provides that exempt property will not be liable for any prepetition claim, *except for:*

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed....

This latter section provides "added protection" for tax liens on exempt property. *In re Henderson*, 133 B.R. 813, 817 (Bankr. W.D.Tex.1991); *Matter of Lassiter*, 104 B.R. 119 (Bankr.S.D.Iowa 1989). Even when the

underlying obligation has been discharged, a tax lien against exempt property will survive bankruptcy. *In re Isom*, 901 F.2d 744 (9th Cir.1990). Section 522(c)(2)(B) appears, therefore, to severely curtail the ability of a debtor to avoid tax liens on exempt property. A debtor's "limited standing to avoid statutory liens" under sections 522 and 545 of the Bankruptcy Code "must be reconciled with the protection afforded perfected tax liens under 11 U.S.C. § 522(c)(2)(B)." *In re Mattis*, 93 B.R. 68, 69–70, n. 2 (Bankr.E.D.Pa. 1988). "It is clear from this provision Congress did not intend that *any* bankruptcy debtor could exempt *any* property from a perfected tax lien." *In re Perry*, 90 B.R. 565, 566 (Bankr.S.D.Fla.1988) [emphasis in the original].

■ The question this court must next answer is the extent to which section 522(c)(2)(B) limits a Chapter 7 debtor's use of avoiding powers provided by the Bankruptcy Code, including that contained in section 506(d). In answer to this question, the two subparagraphs of section 522(c)(2) appear to create a distinction between tax liens and other liens against exempt property. Specifically, section 522(c)(2)(A) recognizes that only those liens that have not been avoided under sections 522, 544, 545, 547, 548, 549 or 724, and that are not void under section 506(d), will survive bankruptcy. On the other hand, section 522(c)(2)(B) states simply that tax liens against exempt property will survive the bankruptcy without reference to the trustee's avoiding powers, section 506(d), or other relevant qualifying language.[5] Most courts that have examined the relationship between the debtor's ability under various Bankruptcy Code provisions to avoid or void liens on exempt property and section 522(c)(2)(B) have concluded that the former provisions may not be used to avoid properly filed tax liens.

A number of decisions have held that the debtor may not use the trustee's avoiding powers under sections 545 (statutory liens) and 547 (preferences) to set aside tax liens against exempt property. *See, e.g., In re Robinson*, 166 B.R. 812 (Bankr.D.Vt.1994);

5. The only qualification to section 522(c)(2)(B) is that the tax lien be properly filed. The Debtors

have not claimed that these IRS liens were improperly filed.

*Henderson, supra; In re Quillard,* 150 B.R. 291 (Bankr.D.R.I.1993). The debtor's standing to avoid certain statutory liens or preferences is dependent on section 522(h). Although section 522(h) permits debtors to utilize the trustee's avoiding powers in order to free up exempt property, the decisions cited conclude that section 522(c)(2)(B) overrides section 522(h). In other words, a debtor should not be permitted to set aside valid tax liens under section 545 or section 547 because the Bankruptcy Code clearly contemplates the continued viability of these liens against exempt property. Any other interpretation of these provisions would render "the plain language of section 522(c)(2)(B) meaningless." *Henderson,* 133 B.R. at 816 [citations omitted].

A Chapter 7 debtor's ability to avoid liens under section 506(d), to the extent that ability survived *Dewsnup,* implicates somewhat different issues in the context of section 522(c)(2)(B). Unlike the trustee's avoiding powers, a debtor's standing to use section 506(d) is not dependent on section 522(h). Nonetheless, courts examining this issue have concluded that the specific restrictions contained in section 522(c)(2)(B) prohibit the use of section 506(d) in conjunction with tax liens against exempt property. *See, e.g., In re Swafford,* 160 B.R. 246, 247–48 (Bankr. N.D.Ga.1993); *In re Koppersmith,* 156 B.R. 537, 539–540 (Bankr.S.D.Tex.1993); *In re McCullough,* 122 B.R. 251 (Bankr.W.D.Pa. 1990). This court agrees that section 522(c)(2)(B) creates a protected status for tax liens against exempt property.

The facts in *McCullough* are remarkably similar to those in this case. There, the debtor's property was encumbered by judicial liens senior in priority to the IRS lien. After the judicial liens had been avoided, the debtor sought to void the IRS lien under section 506(d). There, as here, the IRS lien did not have any economic value when the

bankruptcy was filed. The court concluded that:

> Certain tax liens enjoy a 'security' that other debts secured by liens on exempt property do not. That is, they do not run the risk of being extinguished if the debtor otherwise can and does take advantage of the various lien avoidance provisions.

122 B.R. at 253 [citation omitted].

The Debtor relies on at least two decisions reaching a contrary result to support its interpretation of sections 522(c)(2)(B) and 506(d).[6] However, the decision in *In re Dembo,* 126 B.R. 195 (Bankr.E.D.Pa.1991), which the Debtors describe as the "most compelling," predates *Dewsnup* and focuses primarily on the then unresolved question of a debtor's ability to "strip down" undersecured liens. The decision also contains a revealing, if somewhat cryptic, statement. "We therefore do not consider it productive to ponder the rights of IRS against the Debtor's property pursuant to § 522(c)(2)(B)." 126 B.R. at 202. Thus, the *Dembo* court failed to consider issues raised by the interplay between sections 506(d) and 522(c)(2)(B). The opinion in *In re Krahn,* 124 B.R. 78 (Bankr.D.Minn.1990), simply dismisses the distinction between the two subparagraphs of section 522(c)(2) as unimportant. The court finds neither of these cases persuasive.

■ Rules of statutory construction also favor the result reached in the decisions relied upon by the IRS. First, to allow the debtor to void a tax lien on exempt property under section 506(d) would render section 522(c)(2)(B) meaningless. This result offends the rule that "the plain meaning of legislation should be conclusive . . . ." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

■ Second, section 506(d) is a general statute defining the powers of the debtor to void a lien. Section 522(c)(2)(B) is a more

---

6. Certain cases cited by the Debtors do not identify the property in question as exempt. Additionally, they do not even mention section 522(c)(2)(B). *See In re Zlogar,* 101 B.R. 1 (Bankr.N.D.Ill.1989); *In re Zlogar,* 126 B.R. 53 (N.D.Ill.1991); *In re Crawford,* 115 B.R. 381 (Bankr.N.D.Ga.1990). Another case simply assumes, without analyzing section 522(c)(2)(B), that tax liens may be avoided and relies on earlier cases that did not involve exempt property. *In re Frengel,* 115 B.R. 569, 571 (Bankr. N.D.Ohio 1989). These cases are not helpful to the court's analysis of the issues in question.

specific provision defining limits on a debtor's ability to exempt property from certain liens. Specific statutes control over general statutes. *Bulova Watch Co. v. United States,* 365 U.S. 753, 761, 81 S.Ct. 864, 869, 6 L.Ed.2d 72 (1961). The result of reading section 506(d) as being limited by section 522(c)(2)(B) is to restrict the debtor's avoiding powers in one specific instance, i.e., on exempt property with respect to properly filed tax liens. Such a reading does not otherwise affect the debtor's ability to avoid liens pursuant to section 506(d), even against exempt property. This interpretation gives meaning to both statutes and is the only logical construction of the two provisions.

Accordingly, this court concludes that section 522(c)(2)(B) prohibits the Debtors in this case from seeking to void the IRS liens against their homesteaded exempt property.

**B. *The Dewsnup decision.***

■ The *Dewsnup* decision is generally understood for the proposition that "lien-stripping" is unavailable in a Chapter 7 case although the Supreme Court explicitly limited its holding to the facts before it. 502 U.S. at 417, 112 S.Ct. at 778. The Debtors suggest that *Dewsnup* is not controlling under the present facts because the IRS liens are nonconsensual and "unsecured" in an economic sense (as opposed to "undersecured"). In *Dewsnup,* the Court was concerned that lien avoidance could confer a windfall on the debtors. Here, the debtors argue that the converse is true—that unlike *Dewsnup,* the creditor IRS will receive a windfall merely because the Debtors have the ability to free up equity in their homestead through avoidance of intervening judicial liens under 11 U.S.C. § 522(f).

As discussed above, the court finds that due to the controlling effect of section 522(c)(2)(B), it does not need to decide whether *Dewsnup* prohibits the Debtors' use of section 506(d) to void liens. Nonetheless, even when the *Dewsnup* decision has been analyzed in the context of attempts to void tax liens against *nonexempt* property, other courts in well-reasoned decisions have limited a debtor's lien-stripping rights under section 506(d). These decisions conclude that there

should be no distinction between consensual and nonconsensual liens for purposes of the *Dewsnup* decision. *In re Doviak,* 161 B.R. 379 (Bankr.E.D.Tex.1993); *In re Rombach,* 159 B.R. 311 (Bankr.C.D.Cal.1993). The same result obtains even when the IRS liens are wholly unsecured and without economic value, such as in the present case. *Rombach, supra.*

Thus, even if section 522(c)(2)(B) does not prohibit the Debtors' use of section 506(d), the *Dewsnup* decision would require that this court should reach the same result.

**III. *Conclusion***

The language of section 522(c)(2)(B), which provides that prepetition tax liens will attach to exempt property after bankruptcy, is unambiguous. Accordingly, this court finds no reason to limit the scope of the restrictions on lien-stripping established by the Supreme Court in the *Dewsnup* decision in connection with this exempt property. Additionally, any conflict between a Chapter 7 debtor's avoiding powers and section 522(c)(2)(B) should be resolved in favor of the tax lien's protected status.

The court concludes, therefore, that the Debtors may not use section 506(d) to avoid the IRS liens. The fact that this court will not set aside the IRS liens pursuant to section 506(d) does not impair the Debtors' ability to set aside the judgment liens. *See In re Diliberto,* 150 B.R. 7 (Bankr.W.D.N.Y.1993).

Within 10 days from the date of this decision counsel for the Debtors shall submit a proposed order consistent with this decision and the court's prior rulings on this motion to the court and other counsel or parties that have appeared in connection with this motion.